Commonwealth *v.* Rimmel, Appellant.

Argued November 11, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Sallie Ann Radick,* Assistant Public Defender, with her *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*John E. Nickoloff,* Assistant District Attorney, with him *Carol Mary Los* and *Robert L. Campbell,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., March 24, 1972:

This is an appeal from a conviction for two charges of indecent assault and sentence therefor imposed on each indictment of from one to two years, to be served consecutively.

This appellant's conviction rests entirely upon the sworn testimony of two girls who were eight years old at the time of the trial, January 28, 1971. When the offenses allegedly occurred, on or about August 29, 1970, they were seven years of age. Besides a question raised as to the sufficiency of the evidence upon which this conviction is based, the appellant also raises the question as to the competency of the minor witnesses.

Prior to their taking the witness stand, the minor witnesses were interrogated extensively upon their competency individually in chambers by the trial judge. That interrogation is a part of the record and consists of nine pages of transcript for Cynthya McNamara and over five pages for Linda McNamara. We have studied this voir dire examination to determine whether the lower court abused its discretion in permitting the witnesses, or either one of them, to be sworn and testify. A summary of the law concerning minor witnesses, including the responsibility of the trial judge on deciding their competency, was stated by Mr. Justice Thomas D. McBRIDE, speaking for the Supreme Court of Pennsylvania, in the case of *Rosche v. McCoy,* 397 Pa. 615, 620-621, 156 A. 2d 307, 310 (1959).

"The question of competency of persons said to be mentally immature due to infancy is to be determined in the discretion of the trial judge after an inquiry as

to mental maturity once the fact of infancy appears on the record or is obvious to the judge. This discretion, however, is not absolute but legal. Nevertheless, it will not be reversed in the absence of abuse.

"In the earlier common law the ability of a child of tender years to understand the obligation of an oath was the pivotal factor because it was thought that otherwise the child might be giving what amounts to unsworn testimony. . . . However, the issue is not to be determined merely because of the capacity of the witness at the time he is called to communicate his thoughts in terms of language. There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth."

The appellant raises no question on this appeal on the first two qualifications of a witness, but he does request our close scrutiny of the competence voir dire interrogation of these two witnesses on the latter qualification, contending that the examination did not reveal sufficient data from which their knowledge of the difference between truth and falsehood[1] nor their comprehension of the obligation of telling the truth[2] can be derived.

---

[1] In regard to comprehension of truth and falsehood, Cynthya McNamara stated, "THE COURT: All right. Do you know that you are supposed to tell the truth? CINDY McNAMARA: Yes. THE COURT: Do you tell the truth all the time? CINDY McNAMARA: Yes.", and Linda McNamara stated, "THE COURT: Linda, do you know that you are supposed to tell the truth all the time? LINDA McNAMARA: Yes. THE COURT: Do you try to tell the truth all the time? LINDA McNAMARA: Yes."

[2] In regard to understanding of the obligation of an oath, Cynthya McNamara stated: "THE COURT: Do you know it means to

We have reviewed the statements alluded to (set forth partly in the footnotes) and are constrained to hold, in agreement with defendant's contentions, that it is lacking in a number of important particulars. First, we note that there is no indication in the voir dire examination that either girl comprehends the difference between truth and falsehood. It is regrettable that the trial judge did not press Cynthya on her response that she always told the truth. Moreover, the examination resulted in glaring deficiencies in the lack of revelation by both girls that they are aware of the responsibilities of taking an oath. That a child may be "beaten", as Linda McNamara stated, or be "hollered at" or "punished", as Cynthya McNamara stated, is not sufficient indication of a comprehension of the solemnity of the oath so that a citizen of our Commonwealth may be sentenced or convicted as a result of testimony thereunder given. Although we are living in changing times, no statute has been brought to our attention which demonstrates an abandonment by this Commonwealth of the searching test of testimony under the test of oath and all that that traditionally has implied. In this connection we quote, with approval, from 6 Wig-

---

take an oath, to raise your hand to God. Do you know what that means? CINDY McNAMARA: No. THE COURT: Okay. Well, that means that you are asking God to witness that you are telling the truth. You are asking God to be the one who sees that you tell the truth. Do you understand that? CINDY McNAMARA: Yes." And Linda McNamara stated: "THE COURT: Now, do you know what happens if you tell a lie? LINDA McNAMARA: Yes. THE COURT: Okay. What happens? LINDA McNAMARA: You get beaten. THE COURT: Okay. You mean your mother or your teacher gives you a beating? LINDA McNAMARA: Yes. THE COURT: Do you know it is wrong to tell a lie? LINDA McNAMARA: No. THE COURT: Well, you don't? Do you tell lies? Do you understand my question? That's all right, you are among friends. We are all friends. I told you I have a girl like you. Do you try to tell the truth all the time? LINDA McNAMARA: Yes."

more on Evidence 3d ed. pp. 284-285, §1816: "Theory of the Oath. The theory of the oath, in modern common law, may be termed a subjective one, in contrast to the earlier one, which may be termed objective. The oath used to be regarded as a summoning of Divine vengeance upon false swearing, whereby when the spectators see the witness standing unharmed they know that the Divine judgment has pronounced him to be a truth-teller. But it is now conceived as a method of reminding the witness strongly of the Divine punishment somewhere in store for false swearing, and thus of putting him in a frame of mind calculated to speak only the truth as he saw it. This essentially subjective nature of the security had by the 1800s come to be thoroughly appreciated and established."

The cases cited by the Commonwealth in favor of competency are distinguishable. In *Picpke v. Philadelphia & Reading Railway Company*, 242 Pa. 321, 89 A. 124 (1913), there was no examination of the infant witness, between seven and eight years of age, to determine competency, and the case was remanded therefor. In *Commonwealth v. Allabaugh*, 162 Pa. Superior Ct. 490, 58 A. 2d 184 (1948), we admitted in that case, at page 493, ". . . the answers of the witness in her voir dire were not altogether satisfactory . . ." although we did not find the trial judge had abused his discretion. In *Commonwealth v. Carnes*, 165 Pa. Superior Ct. 53, 67 A. 2d 675 (1949), the defendant did not question the competency of a Commonwealth seven-year old witness until cross-examination, which we held was untimely.

We are convinced that these infant witnesses in both the voir dire examination and in their testimony after being sworn showed no comprehension of the purpose of an oath and the Divine punishment it implied. The fact that the trial judge offered an explanation and received an affirmative response is not sufficient to

demonstrate the comprehension the law requires of a witness.

Since we find that the convictions were based upon incompetent testimony, we will not rule on the additional reasons advanced by the appellant.

Judgment of sentence reversed and a new trial granted.

WRIGHT, P. J., would affirm on the opinion of Judge RIDGE.

JACOBS, J., dissents.