Commonwealth *v.* Riley, Appellant.

Argued June 25, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Leonard Turner,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 16, 1974:

On April 27, 1972, appellant, Warren Riley, was convicted by a jury of murder in the second degree. Post-trial motions were denied, and appellant was sentenced to a term of not less than seven nor more than twenty years in a state correctional institution. This appeal followed.

The salient facts surrounding this appeal are as follows: Appellant and the decedent, Constance Riley, were husband and wife at the time of the homicide, but were not living together. On November 22, 1971, at or about 9:30 a.m., a brother of the decedent went to the home of his sister Constance in order to check on her, as he had been doing since she had separated from appellant. Upon entering the home, he was greeted by a child of the decedent, but did not see the decedent. He proceeded to the upstairs bedroom and found his sister dead. The police learned from Warren Riley III, the decedent's son, that appellant, the child's father, may have committed the homicide. Appellant, accompanied by an attorney, surrendered to the police. A preliminary hearing was held and appellant was discharged, apparently due to the magistrate's decision that the son, six years old and the only eyewitness to

the crime, was incompetent to testify because of his age. Appellant was then re-arrested, and at his second preliminary hearing, his son was allowed to testify and appellant was bound over for trial. At trial, appellant's son testified over objection.

At appellant's trial, his son testified that he had seen his father kill his mother. After the jury returned their guilty verdict, appellant requested to speak to his son, whereupon appellant, appellant's mother, appellant's son and three sheriff's deputies went into a small room. After this meeting, appellant's attorney informed the trial judge that appellant's son had stated that he lied when he stated that his father had killed his mother. The trial judge then made arrangements for a court en banc hearing. A court en banc hearing was held on May 8, 1972, at which a sheriff's deputy testified that Warren did tell his father that he lied on the witness stand when he said his father killed his mother.

The child testified before the court en banc that he told his father that he lied because he wanted his father to feel happy, but that his original testimony was true. The court en banc found that the child's testimony was competent and admissible.

Appellant first argues that the trial court erred in finding that his six-year-old son was competent to testify. We do not agree. In *Commonwealth v. Fox*, 445 Pa. 76, 282 A.2d 341 (1971), we stated:

"'Competency is the rule and incompetency the exception . . . . The burden to show incompetency lies upon the party who asserts . . . .

"'The question of competency of persons said to be mentally immature due to infancy is to be determined in the discretion of the trial judge after an inquiry as to mental maturity once the fact of infancy appears on the record or is obvious to the judge. This discretion, however, is not absolute but legal. Neverthe-

less, it will not be reversed in the absence of abuse.' Rosche v. McCoy, 397 Pa. 615, 619-20, 156 A.2d 307, 309-10 (1959) (citations omitted).

"In Rosche, we continued by listing three requirements necessary for determining a child witness's ability to testify: '. . . There must be (1) . . . [a] capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is* that she is called to testify about and (3) a consciousness of the duty to speak the truth. These first two considerations are in some instances easily answered where a 7-year-old witness is called upon to testify as to a very recent event . . . .' Id. at 620-21, 156 A.2d at 310."

In the instant case, we do not feel that the trial judge abused his discretion in finding the witness competent. The trial court conducted an extensive voir dire outside the jury's presence to establish the witness's competency. The child demonstrated his ability to communicate and his capacity to recall the incident. The child stated that he remembered living at his mother's home at the time of the homicide and also that he remembered seeing his father attack his mother. Moreover, the trial was conducted within six months of the homicide, so as to shorten the time span between the child's observations and his recollection. In addition, the child demonstrated that he understood the nature of his oath to tell the truth. When asked what would happen if he lied, he stated that he would "go to the devil." This is far different from the case of *Commonwealth v. Rimmel*, 221 Pa. Superior Ct. 84, 289 A.2d 116 (1972), which appellant cites in an effort to establish the child's incompetency. In *Rimmel, supra,* the Superior Court found that the infant witnesses were incompetent because their answers in-

dicated that they did not understand the nature of their oath. In the instant case, the witness indicated he understood the nature of his obligation.

Appellant next argues that since his son recanted his testimony after the trial, he is entitled to a new trial. We do not agree. In *Commonwealth v. Coleman*, 438 Pa. 373, 264 A.2d 649 (1970), we stated: "The well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is alleged recantation of state witnesses unless there has been a clear abuse of discretion." At page 377.

In the instant case, we can see no such abuse of discretion. For one thing, the witness did not make his recantation under oath. Rather, his recantation occurred in a room adjoining the courtroom. When he was again under oath, before the court en banc, appellant's son admitted that in a post-trial conversation with his father, he had recanted his original testimony in order to make his father happy, but he again repeated that his original trial testimony was the truth.

In addition, testimony of two other witnesses presented by the Commonwealth corroborated the original testimony of the child, thus indicating that this original testimony, and not the recantation, was true. Although the appellant had denied being near the decedent's home on the night of the murder, Electra Towles, a neighbor of the decedent, testified that she heard appellant and the decedent arguing on that night and later saw appellant leave the decedent's home through a rear entrance. Another neighbor, Denise Dade, also identified appellant's voice as the one she heard arguing with the decedent on the night of the murder. The testimony of these other witnesses not only tends to bolster credibility of the child's in-court testimony, it is also evidence of his competency as a witness.

396

Appellant next argues that the trial court committed error when it allowed the Commonwealth to cross-examine appellant as to substantial life insurance policies on his wife of which he was the beneficiary. We do not agree. The existence of the policies provides a possible motive for the killing. As we said in *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960) : "Evidence to prove motive, or intent, or plan, or design, or ill will or malice is always admissible." At page 216.

Lastly, appellant argues the trial judge erred in reviewing the trial testimony. However, appellant did not take a specific exception to the trial judge's summary and, therefore, failed to preserve his objection on appeal. See *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).

Judgment of sentence affirmed.