469 A.2d 604

**COMMONWEALTH of Pennsylvania**

v.

**Patrick L. BAILEY, Appellant.**

Superior Court of Pennsylvania.

Argued May 26, 1983.

Filed Nov. 18, 1983.

254

256

Charles F. Gilchrest, Sharon, for appellant.

Harry A. Penich, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

Appellant was tried before the Honorable Albert E. Acker and a jury in the Mercer County Court of Common Pleas, and found guilty of indecent assault. 18 Pa.C.S. § 3126. Appellant's trial counsel, a public defender, filed boiler plate post-verdict motions. Appellant sent a letter to Judge Acker raising additional grounds for post-verdict relief, including several instances of ineffective assistance of counsel. Judge Acker appointed new post-trial counsel, who filed amended motions. After conducting post-trial hearings on appellant's claims on May 8 and 27, 1980, Judge Acker denied the amended motions on December 8, 1980, and reaffirmed his order in an opinion dated January 31, 1981. Judgment of sentence was imposed March 20, 1981, and this appeal followed.

The incident involved in this case occurred at about 4:30 p.m. on August 18, 1979, in the Shenango Dam camping area. The nine-year-old victim, whom we will call Jane H., testified at trial to the following events: She was at the

camp that day with her family. Her mother had given her some trash to throw away, and she went to the rest room to put the trash in a can by the door. Appellant, a park rest room attendant, appeared and told her to take the trash to a dumpster, which she did. Jane then returned to the rest room to relieve herself, and passed appellant coming out of the rest room. Jane entered the third stall. The door to the stall had no lock and would not close completely. She heard footfalls getting louder and appellant walked in on her by accident. He apologized and excused himself, but returned shortly. The child was on her feet wiping herself with her pants at her knees. Appellant entered the stall and pushed her up against the wall with his hand on her shoulder. He then stooped and put his hands on her crotch, one from in front and one from behind, and began kissing her stomach. He tried to kiss her face. Jane asked what he was doing, but he did not respond. She began to scream. Appellant stood up and told her not to tell anyone. She ran screaming from the rest room and immediately told her parents what had happened.

Appellant's defense was designed to show that Jane had a vivid imagination of which the assault was a product. He did not deny being at the rest room at the time in question, or walking in on Jane by mistake. He testified that when he opened the stall door she was standing with her back to the door, and was knocked forward. He reached to help her, then quickly excused himself.

Appellant now maintains that his trial counsel rendered ineffective assistance in seven particular respects.

Our task in cases of alleged ineffectiveness of counsel encompasses both an independent review of the record and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). However, our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis de-

signed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. *Id.; Commonwealth v. Irwin*, 494 Pa. 277, 431 A.2d 257 (1981).

If the underlying claim or strategy foregone by counsel was without arguable merit, our inquiry into counsel's effectiveness is at an end; counsel cannot be deemed ineffective for failing to advance a baseless claim. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Only if the foregone claim is found to be of arguable merit do we proceed to determine whether there was some reasonable basis for counsel's actions designed to protect his client's interests. *Id.; Commonwealth v. Norris*, 305 Pa. Super. 206, 451 A.2d 494 (1982).

There is a presumption in the law that counsel was effective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981); *Commonwealth v. Norris, supra.* The burden of proving counsel's ineffectiveness never shifts from the party alleging it. *Washington v. Maroney, supra.*

Appellant first alleges that counsel was ineffective for failing to object to the trial court's qualification of Jane H. as competent to testify. Any such objection would have been groundless.

When a child under the age of fourteen is called to testify, the competency of the infant witness must be independently established. *Rosche v. McCoy*, 397 Pa. 615, 156 A.2d 307 (1959). In order for competency to be established it must be shown that the infant witness is conscious of the duty to tell the truth. *Id.* Appellant argues that Jane H. did not evidence a consciousness of the duty to tell the truth, because she only gave terse "yes" answers to leading questions from the trial judge; she did not indicate that she knew the meaning of "truth" and "lie"; and she did not indicate that she knew the moral consequence of telling a lie.

Appellant's contention is partly belied by the record. In response to Judge Acker's query what she had been taught

about God, Jane answered that God was always watching you and knew when you lied. Jane's response bespeaks an independent perception that divine moral retribution attaches to the act of lying.

In *Commonwealth v. Short*, 278 Pa.Super. 581, 420 A.2d 694 (1980), we upheld a competency determination over a contention similar to appellant's. There the minor witness testified she could not tell a lie because the judge and her mother would punish her, although she could not explain the difference between "the truth" and "a lie." We think the showing of Jane H.'s competency also compares favorably with showings held adequate in other cases. *See Commonwealth v. Payton*, 258 Pa.Super. 140, 392 A.2d 723 (1978) (not error to permit six-year-old victim to testify although she could not give an accurate example of a lie and did not know concept of divine retribution); *Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154, *cert. denied*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982) (competency determination upheld despite child's inability to explain the meaning of "oath").

Appellant relies on *Commonwealth v. Rimmel*, 221 Pa. Super. 84, 289 A.2d 116 (1972). There we overturned competency rulings allowing two eight-year-old girls, seven at the time of the incidents, to testify against the defendant on indecent assault charges. We held that the girls had evidenced comprehension of neither the difference between truth and falsehood, nor the moral responsibility to tell the truth under oath, where they knew only that they would be hollered at, beaten, or punished for lying.

*Rimmel* was distinguished in *Commonwealth v. Riley*, 458 Pa. 390, 326 A.2d 384 (1974); *Commonwealth v. Mangello*, 250 Pa.Super. 202, 378 A.2d 897 (1977); and *Commonwealth v. Short, supra*. The same distinction recognized in these cases obtains in the present case. Whereas in *Rimmel* the minor witnesses were able to relate their duty to tell the truth only to their fears of physical or emotional abuse, in each of the other cases the witness was able to relate lying to moral retribution.

Moreover, we should note the steady trend away from the application of the law found in *Rimmel.* In both *Mangello* and *Short* we criticized *Rimmel* and limited it to its facts. We recognized that competency determinations are matters peculiarly within the discretion of the trial judge, whose exercise of discretion should not be disturbed absent flagrant abuse. Because the trial judge who makes the competency ruling has a much superior opportunity to assess the competency of the child witness, an appellate court should virtually never reverse the ruling, the better practice being to accept the testimony on its face and leave the matter of credibility to the fact finder. *See* 6 Wigmore, *Evidence* § 1821 (Chadbourn rev. 1976); *Commonwealth v. Short, supra; Commonwealth v. Mangello, supra.* Judge Acker's decision to employ leading questions was within his discretion in determining the competency of Jane H. *See* 98 C.J.S. *Witnesses* § 332 (1957) ("It is usual and proper for the court to permit leading questions in conducting the examination of a witness who is immature...."). Appellant's trial counsel was not ineffective for failing to object to the qualification of the child witness.

Appellant's next contention concerns trial counsel's failure to impeach Jane's credibility through use of her prior statements to park ranger Harry O'Connell and to policemen Eric Baugher and Ronald Staul. Appellant presented evidence at the post-conviction hearing designed to show that Jane's statements to O'Connell, Baugher, and Staul were discrepant with her trial testimony.

O'Connell interviewed Jane immediately after the incident and prepared an incident report. The version of the incident appearing in O'Connell's report is that Jane went to the rest room to throw away a bag of garbage and to use the facilities; that the door to the rest room was propped open with a garbage can, in which Jane attempted to put the bag of trash; that the rest room cleaner (Bailey) told her to throw the bag in the dumpster nearby, which she did; that she returned to the women's side of the rest room; that the door was closed and no one was inside, so she went

in; that the rest room attendant then entered, and, seeing Jane, apologized and left; that moments later the attendant reentered, pushed Jane against the wall and began touching and kissing her; that Jane screamed, the attendant told her not to tell anyone, and she ran from the rest room crying.

Shortly after O'Connell talked with Jane, Officer Eric Baugher spoke with her. The version of the incident contained in Baugher's report is that Jane's parents sent her to throw some trash in the dumpster; that instead she tried to throw the trash in the rest room can but was sent to the dumpster by Bailey; that Jane went to the rest room afterwards and heard Bailey come in; that as she stood wiping herself the door came open knocking her against the wall; that Bailey entered her stall and put his hands on her; that Bailey told her not to tell anyone; and that she screamed and ran from the rest room back to her campsite.

On August 22, 1979, four days after the incident, Officer Staul interviewed Jane and recorded the results of the interview in a report and an affidavit of probable cause for Bailey's arrest. The version of the incident contained in Staul's report and affidavit is that Jane's parents sent her to the dumpster with some trash; that instead Jane tried to deposit the trash in the rest room cans; that Bailey, who was cleaning sinks in the rest room, told her to take the trash to the dumpster, which she did; that she returned to the rest room to use it; that Bailey was cleaning sinks when she walked in; that shortly after she went to the middle stall she heard footfalls leading out the door; that about a minute later she heard footfalls coming into the rest room and Bailey opened the door to her stall; that Bailey said "Sorry" and closed the door and left; that a very short time later Jane was wiping herself with her pants down when she saw the same man over the door again; that he pushed her up against the wall with a hand on her shoulder and held her there; that he got on his knees and started kissing her; that he put one hand between her legs from the front and the other hand between her legs from behind and touched the part of her body she used to go to the bathroom

with; that during the entire incident Jane was asking Bailey what he was doing; that Jane screamed; that Bailey let go of her, told her not to tell anyone, and backed away; and that Jane ran from the rest room to her parents.

Bailey's trial counsel, Michael Wherry, did not interview O'Connell or read his report. Wherry did talk to Baugher and Staul, and did see their reports. Wherry called only Baugher as a defense witness at trial, but not for the purpose of impeaching Jane with prior inconsistent statements. Bailey now contends that Wherry's failure to use Jane's statements to O'Connell, Baugher, and Staul as impeaching evidence constitutes ineffectiveness of trial counsel.

 Failure to interview witnesses who might have furthered a defense, or to produce known evidence helpful to the defense, supports a finding of ineffective assistance of counsel. *Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976); *Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Fallings,* 251 Pa. Super. 365, 380 A.2d 822 (1977). But trial counsel's failure to call possible witnesses will not be equated with a conclusion of ineffectiveness of counsel absent some positive demonstration that their testimony would have been helpful to the defense. *Commonwealth v. Wade,* 501 Pa. 331, 461 A.2d 613 (1983); *Commonwealth v. Leonard,* 499 Pa. 357, 453 A.2d 587 (1982); *Commonwealth v. Payne,* 309 Pa.Super. 25, 454 A.2d 1063 (1982). Because the burden of proving counsel's ineffectiveness rests on the party alleging it, appellant's burden in this case was to prove that Wherry forsook a course of conduct that would have helped the defense. *Commonwealth v. Helvy,* 278 Pa.Super. 458, 462, 420 A.2d 631, 633 (1980); *Commonwealth v. Olivencia,* 265 Pa.Super. 439, 402 A.2d 519 (1979). This burden appellant failed to carry.

 A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with her trial

testimony. *Commonwealth v. Brown,* 302 Pa.Super. 391, 448 A.2d 1097 (1982); *In re Farms,* 216 Pa.Super. 445, 268 A.2d 170 (1970). It is difficult for this Court to see any actual inconsistency between Jane's direct testimony at trial and her statements as reported by O'Connell and Baugher. She testified that she passed Bailey while entering the rest room. This fact does not appear in the O'Connell or Baugher reports. Additionally, Baugher's report contains no mention of Bailey's having entered Jane's stall two distinct times before the assault. However, as Judge Acker noted in his post-verdict opinion, the reports from which the witnesses at the evidentiary hearing read were mere summaries by the witnesses in paraphrase of what Jane had told them. The witnesses did not through independent recollection elaborate on the written words of their reports. Moreover, Baugher spoke with Bailey for half an hour before getting Jane's story. There is therefore a clear inference that Baugher's report was a compilation or distillation of what Baugher learned from both Jane and Bailey, rather than a summary of Jane's words alone. The mere omissions of detail in O'Connell's and Baugher's written reports are not inconsistencies of the sort contemplated by the law as impeaching evidence. *See In re Pittsburgh Action Against Rape,* 494 Pa. 15, 428 A.2d 126 (1981). Mere dissimilarities or omissions in prior statements, even when the statements are the verbatim words of the victim, do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements. *See Commonwealth v. Gee,* 457 Pa. 123, 354 A.2d 875 (1976); *In re Silverberg,* 459 Pa. 107, 327 A.2d 106 (1974); *Commonwealth v. Ryan,* 253 Pa.Super. 92, 384 A.2d 1243 (1978); M. Greenberg & A. Bocchino, *Pennsylvania Evidence* 88 (1983); G. Lilly, *An Introduction to the Law of Evidence* § 83 at 303 (1978). A comparison of Jane's testimony with her statements to O'Connell and Baugher, and consideration of the circumstances under which the statements themselves were taken and transcribed, lead us to conclude that a jury could not reasonably

have doubted Jane's testimony on the basis of the available evidence of her prior statements to O'Connell and Baugher.

It is arguable that Jane's statement to Staul four days after the incident deviated more substantially from her testimony. Not only does Staul's report not mention Jane and Bailey passing at the rest room door; the report seems to indicate further that Bailey was still in the rest room cleaning sinks when Jane entered, and that he did not exit until she went into her stall. However, there were compelling tactical reasons for counsel not to attempt to impeach Jane with the Staul statement.

Judge Acker indicated in his post-verdict opinion that he would have required counsel first to confront Jane on cross-examination with her prior statement in order to provide her the opportunity to explain or deny it. *See Commonwealth v. Manning*, 495 Pa. 652, 435 A.2d 1207 (1981); *Commonwealth v. Brown, supra*. Had Jane then successfully explained or denied the statement, counsel might have been impotent to rebut her explanation or denial.

■■■■ First, counsel could not have used the Staul report itself as a tool to confront Jane with a prior inconsistency. A written report which is only a summary of the words of the victim and not verbatim notes from the victim cannot be used by the defendant to impeach the victim on cross-examination. *Commonwealth v. Hustler*, 243 Pa.Super. 200, 364 A.2d 940 (1976). The rationale for this rule is that it would be unfair to permit impeachment of a witness through the use of a police officer's interpretation of what the witness said, rather than what the witness said verbatim. *In re Pittsburgh Action Against Rape, supra; Commonwealth v. Pinder*, 310 Pa.Super. 56, 456 A.2d 179 (1983); *Commonwealth v. Hill*, 267 Pa.Super. 264, 406 A.2d 796 (1979).

■■■■ Secondly, it is not clear that counsel would have been allowed to impeach Jane's testimony through direct testimony from Staul. Impeachment through extrinsic evidence is not generally allowed on matters collateral to the

issues at trial. Lilly, *supra,* at § 84; *see Commonwealth v. Brown, supra; In re Farms, supra;* Greenberg & Bocchino, *supra,* at 89.

██ Thirdly, even assuming that the discrepancy between Jane's direct testimony and Staul's report was material to an issue at trial, *i.e.,* credibility, the impeachment value of Staul's testimony would have been greatly minimized by Jane's testimony on cross-examination. After Jane had testified to passing Bailey at the rest room door, defense counsel elicited the following:

> MR. WHERRY: Now, was Mr. Bailey in the rest room when you went in, or was he coming out of the rest room?
>
> THE WITNESS: He was coming out.
>
> MR. WHERRY: Did you ever see Mr. Bailey doing any cleaning in there?
>
> THE WITNESS: Yes.
>
> MR. WHERRY: When did you see him doing cleaning?
>
> THE WITNESS: When I was going to come in.
>
> MR. WHERRY: Okay. You saw him in there cleaning?
>
> THE WITNESS: Uh huh.
>
> MR. WHERRY: Was he cleaning sinks?
>
> THE WITNESS: Yes.

There is a striking similarity between Jane's trial testimony taken as a whole and the narrative contained in Staul's report; the only essential difference is the allusion in Staul's report to footfalls (presumably Bailey's) leading *out* the rest room door after Jane entered her stall. And the effectiveness of Staul's testimony in establishing that this allusion is not a rearrangement or misinterpretation of Jane's words is doubtful. At the post-conviction hearing Staul's testimony, like O'Connell's and Baugher's, consisted of nothing more than a direct reading from a report, with no elaboration on what Jane's actual words were.

██ Against the questionable impeachment value of Staul's testimony stood the danger to the defense that the Commonwealth would have been able to rehabilitate Jane

effectively by having her prior consistent statements read into the record. As a general rule, prior declarations of a witness which are consistent with her in-court testimony are admissible to corroborate the witness only where it is alleged that the in-court testimony has been recently fabricated or stems from corrupt motives. *Baldino v. Castagna*, 308 Pa.Super. 506, 454 A.2d 1012 (1982). However, it is not necessary that an explicit allegation of recent fabrication be made; it is enough that the jury be reasonably able to infer that a party is imputing recent fabrication to the witness. *Commonwealth v. Gore*, 260 Pa.Super. 540, 396 A.2d 1302 (1978). In this case, had appellant attempted to prove that Jane had previously said that appellant was in the rest room until Jane entered her stall, the jury might reasonably have inferred that appellant was imputing recent fabrication to Jane's trial testimony. At that point it would have been open to the Commonwealth to have Staul read his entire report to the jury to rebut the inference that Jane had made up her story. *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Kjersgaard*, 276 Pa.Super. 368, 419 A.2d 502 (1980). Although the jury would not have been entitled to consider Jane's prior consonant statements as proof of the matter contained in them, *Commonwealth v. Wilson*, 394 Pa. 588, 148 A.2d 234 (1959), the statements would have been admissible to rehabilitate Jane's credibility in general, and in particular to corroborate the accuracy of her remembrance of the details of the actual assault. *Commonwealth v. Cruz, supra; cf. Catina v. Maree*, 498 Pa. 443, 447 A.2d 228 (1982) (error for court to permit entire statement to be read into record as rehabilitation evidence where statement contained inadmissible opinion evidence and did not meet the force of the impeaching portion of the statement).

We conclude that counsel was not ineffective for not attempting to impeach the victim in the manner suggested by appellant.

Appellant's remaining allegations of ineffectiveness concern trial counsel's failure to request or object to certain jury instructions.

 Appellant claims that counsel was constitutionally ineffective for not requesting an instruction that the child witness's testimony should be received with caution and carefully scrutinized before being accepted. In *Commonwealth v. Barnosky*, 264 Pa.Super. 443, 400 A.2d 168 (1979), this Court declined to adopt a rule requiring an "infant witness" charge like that suggested by appellant in cases in which a child witness has testified. Instead, we said that the matter is better left to the sound discretion of the trial judge based on his observation of the child's testimony and the youth's mental and emotional maturity. We also said that once the initial determination is made that the child is a competent witness, then the general charge on credibility will usually suffice as to all witnesses.

 It is elementary that a finding of ineffectiveness can never be made unless we conclude that the alternatives not chosen by counsel offered a potential for success substantially greater than the tactics actually utilized. *Washington v. Maroney, supra.* Appellant has failed to show that a request for an infant witness charge offered a potential for success substantially greater than counsel's quiescence, and therefore counsel cannot be found ineffective.

Appellant next argues that counsel should have objected to the instructions on the credibility of the child witness actually given by the trial court. The court charged as follows:

Credibility is entirely for your consideration. The Court has nothing to say as to who you will believe or what weight you will give the testimony of any witness or party. In determining the credibility of the witness, you will consider their manner of testifying, their apparent candor and frankness and fairness or lack of it, their bias or prejudice in the case if any, their means of observing that which they testify to, their corroboration, if any, by other witnesses, and their interest in the result. Now, in this case we have a child who testified. We all know that in looking at whether a child tells you the truth or not

that sometimes children are given to fantasies, and that's possible. There were questions asked of this child to attempt to support that possible theory .... The thrust of that type of testimony is to suggest that the girl is fantasizing the story which she told from the stand. Is she the type of a child that would do that or not? That's for you to determine. You saw her, and you had the opportunity to evaluate her as to her abilities. On the other hand, you know that children are not as sophisticated as adults. By that I mean that they don't have the experience and knowledge that many of us have as to the consequences of what they say or do; therefore, they may be conceivably more apt to tell the truth, because they don't know what the effect of telling an untruth may be. I can't say that necessarily is the case here as to this child, but I'm throwing that out as a basis of human nature. I'm not telling you anything that you don't already know. I'm just bringing it to your minds. That I'm sure that you have all found out through human nature, through your own children, through yourself, as you were a child growing up.

Appellant contends that this charge indicated to the jury that children are inherently more believable than other witnesses, and that the judge believed Jane's testimony in particular to be more credible than the defendant's.

■ Appellant cites *United States v. Meltzer,* 100 F.2d 739 (7th Cir.1938), in which the court disapproved an instruction that a "stranger to the courts" might be considered more believable than witnesses who had appeared in court before. We do not accept appellant's analogy between the instructions disapproved in *Meltzer* and those given in the présent case. The trial judge in *Meltzer* suggested to the jury his own belief that the "stranger to the courts" was an honest man. The court in this case simply suggested the unsophistication of children as a factor, known through general human experience, which the jury could consider in reaching their verdict. The court did

not opine that the particular child witness in this case was unsophisticated and therefore apt to tell the truth.

The trial judge may comment on the evidence as long as the jury is left free to act on its own view of the evidence. *Commonwealth v. Austin*, 274 Pa.Super. 1, 417 A.2d 1220 (1980); *Commonwealth v. Dougherty*, 259 Pa.Super. 88, 393 A.2d 730 (1978). It is well settled that the trial court's instructions to the jury must be read as a whole, and that error cannot be predicated on isolated excerpts from the charge. *Commonwealth v. Irwin*, 494 Pa. 277, 431 A.2d 257 (1981); *Commonwealth v. Todaro*, 301 Pa.Super. 1, 446 A.2d 1305 (1982). Judge Acker's charge on infant witness credibility was balanced, fair, unargumentative, and deferent to the jury. Counsel was not ineffective for accepting the charge as given. *Compare Commonwealth v. Austin, supra, with Commonwealth v. Dougherty, supra.*

Appellant finds counsel ineffective also for failing to object to the court's instruction that the jury was to determine whether the defendant's testimony or that of the Commonwealth's witness was more realistic and logical in light of the other evidence. Appellant contends that, by allowing the jury to weigh the credibility of the opposing witnesses, the court reduced the Commonwealth's burden of proof to one of preponderance of the evidence. Appellant does not dispute that the court otherwise properly instructed the jury on the Commonwealth's burden of proof.

It is true that the Commonwealth bears the unshifting burden of proving each and every element of the crime charged beyond a reasonable doubt, *Commonwealth v. Hinchcliffe*, 479 Pa. 551, 388 A.2d 1068, *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978), but it is also true that credibility of witnesses is a matter exclusively within the province of the jury, and that in passing on the weight and credibility to be accorded to witness testimony

the jury is free to believe all, part, or none of any witness's testimony. *Commonwealth v. Smith*, 484 Pa. 71, 398 A.2d 948 (1979); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). These principles co-exist. A trial court does not err when it instructs the jury both on the Commonwealth's burden of proof and on the jury's exclusive prerogative to decide witness credibility. Because we believe the trial court's instructions on witness credibility were a correct explication of the law, we find appellant's claim of ineffectiveness on this count meritless.

■ Appellant's next point is that counsel was ineffective for failing to object when the court in its charge repeatedly referred to the child witness as "Jane", while referring to appellant as "Patrick Bailey", "Mr. Bailey", or "the defendant". Appellant alleges that the court's appellations prejudiced him by evidencing the court's sympathy with the child. This point is frivolous. As Judge Acker noted in his opinion, it is customary and usual for adults to refer to nine-year-old children by their first names, and it might have seemed strained for the judge to refer to Jane by any other name. We would add only that it is unusual for judges to refer to adult defendants by their first names, and for Judge Acker to have called appellant "Patrick" would have seemed ludicrous.

■ Appellant finally contends that the court did not instruct the jury that lack of consent of the victim is an essential element of the crime of indecent assault; and that counsel's failure to object to the charge on this ground was ineffectiveness. Appellant's claim is contradicted in the record. The court did instruct the jury that a touching must be indecent, offensive to the victim, and without her consent to be indecent assault. *See* 18 Pa.C.S. § 3126; *Commonwealth v. Mumma*, 489 Pa. 547, 414 A.2d 1026 (1980).

Affirmed.