J-A29009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.G. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| M.A. | | |
| | Appellee | No. 1861 WDA 2014 |

Appeal from the Order Dated October 16, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD13-001728-006

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                **FILED AUGUST 19, 2016**

M.G. ("Mother") appeals the order denying her request for a protection from abuse ("PFA") order against her estranged husband, M.A. ("Father"). We affirm based upon the cogent and well-reasoned opinion that the Honorable Kim D. Eaton filed on January 28, 2015.[1]

The trial court succinctly summarized the factual and procedural history as follows:

> [Mother and Father] are currently involved in a bitter custody dispute [regarding their two minor children, E.A. and A.A.] On October 7, 2014, Mother filed a PFA against Father which contained allegations of abuse against both children. Although Mother filed the PFA on her behalf, there are no allegations of abuse against her in the PFA. Mother alleged that Father made

_____

[1] This matter was reassigned to the majority on June 30, 2016.

[E.A.] jump rope 250 times while recovering from a concussion and made her change clothes in front of him. Mother averred that [A.A.] "has been acting out inappropriately in words and actions, which lead me to fear he is being abused both physically and sexually." She further averred that [A.A.] "discussed that dad hit him and said he would burn our home down." The abuse was alleged to be ongoing with the most recent occurring on October 2, 2014. At the time, [A.A.] was 2 years old and in diapers. A temporary PFA was entered excluding Father from Mother's residence pending a final hearing. The matter was referred to the Allegheny County Police Department and the Allegheny County Office of Children, Youth, and Families (CYF) for investigation.

A hearing on the final PFA was held on October 16, 2014. The Court heard testimony from court appointed psychologist, Dr. McGroarty, Abigail Emery (Emery), Mary Spencer (Spencer) and Mother. At Mother's request, the Court interviewed [A.A.] in camera to see if he could be qualified as a competent witness. He could not be qualified. All testimony and evidence offered at the hearing was directed to abuse of [A.A.]. There was no evidence or testimony to support the allegations of abuse against [E.A.] or ongoing abuse against Mother. At the conclusion of the hearing, the Court issued an order dismissing the PFA. Mother timely appealed[.]

Trial Court Opinion, 1/28/15, 2-3.

Mother's Rule 1925(b) statement leveled eight claims that largely assailed the sufficiency and weight of the evidence presented during the PFA hearing. The trial court addressed those claims in its Rule 1925(a) opinion. On appeal, Mother compressed her original issues into the following two questions for our review:

A.   Whether the Trial Court erred as a matter of law and abused its discretion in refusing to enter a Protection from Abuse Order on behalf of the parties' minor children, A.[A.] and E.[A.], as protected parties, when the preponderance of the evidence, including testimony the Trial Court found to be credible, showed

abuse being actively committed against the children by Appellee, as well as past instances of abuse and threats of abuse by Appellee against the children and the Appellant over the course of the parties' marriage.

B.    Whether the Trial Court erred as a matter of law and abused its discretion in refusing to enter a Protection from Abuse Order on behalf of Appellant when the preponderance of the evidence showed abuse, threats and past instances of abuse against Appellant perpetrated by Appellee against both she and the parties' children, including incidents whereby Appellee threatened to molest the children, inflict sexual harm upon Appellant and attempted to have Appellant involuntarily committed to a mental institution in Turkey.

Mother's brief at 7.

In ***Ferko-Fox v. Fox***, 68 A.3d 917, 921 (Pa.Super. 2013), we reiterated, "The purpose of the PFA act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring."   The petitioner has the burden of proving by a preponderance of the evidence the allegations of abuse.   ***See*** 23 Pa.C.S. § 6107(a).   This Court "review[s] the propriety of a PFA order for an abuse of discretion or an error of law." ***Ferko-Fox***, at 920.   Our Supreme Court has defined abuse of discretion as follows:

The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge.   Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions.   Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

- 3 -

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000), (quoting *Coker v. S.M. Flickinger Co.*, 625 A.2d 1181, 1184-855 (Pa. 1993)).

As the party that prevailed in the PFA proceedings, we review the evidence in the light most favorable to Father and grant him all reasonable inferences that flow from the evidence presented. *See Snyder v. Snyder*, 629 A.2d 977, 983 (Pa.Super. 1993) ("[W]e review presently whether the evidence in the light most favorable to the Petitioner and granting her the benefit of all reasonable inferences, was sufficient to sustain the trial court's determination that abuse was shown by a preponderance of the evidence.") Similarly, we defer to the trial court's fact-finding and credibility determinations. *See Raker v. Raker*, 847 A.2d 720, 726 (Pa.Super. 2004) (quoting *Williamson v. Williamson*, 586 A.2d 967, 972 (Pa.Super. 1991) (in PFA proceeding, "finder of fact is entitled to weigh evidence and assess credibility and believe all, part or none of the evidence presented").

As it relates to the first issue that Mother presents on appeal, Mother separates her argument into three fundamentally distinct assertions: (1) the trial court erred in disregarding A.A.'s allegations of physical and sexual abuse; (2) the trial court abused its discretion in relying upon the opinions of the court-appointed custody expert; and (3) the court erred in considering the absence of a criminal prosecution, CYF investigation, physical evidence of abuse, or forensic findings that implicate Father in the alleged abuse.

However, since Mother failed to assert the latter two issues in her Rule 1925(b) statement and because those complaints are not fairly suggested by the claims that she actually leveled, they are waived. *See* Pa.R.A.P. 1925(b)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Accordingly, we do not address the merits herein.

Mother's second issue concerns her interpretation of the evidence that she adduced in favor of the PFA petition as it relates to protecting her from Father's alleged abuse. To support her claim, Mother combines the current allegations regarding A.A. with "past incidences of abuse" and an alleged threat that Father ostensibly communicated to her through A.A. to fashion a claim that the court erred in failing to "follow the weight of the evidence . . . that she was a victim of abuse under the Act[.]" Mother's brief at 45-47. Again, no relief is due.

After a thorough review of the certified record, the parties' briefs, and the pertinent law, and following our examination of the Pa.R.A.P. 1925(a) opinion authored by the distinguished Judge Kim D. Eaton, we find that she has ably discussed the issues and adopt her reasoning as our own. Accordingly, we affirm on the basis of her well-reasoned opinion.

We address the primary component of Mother's first argument separately. This issue was fairly included in Mother's Rule 1925(b) statement as a subsidiary to her claims that the trial court erred in

concluding that A.A. was not a competent witness and in failing to enter the PFA despite its finding that two of Mother's witnesses, Abigail Embry and Mary Spencer, testified credibly. Stated plainly, Mother asserts that the trial court violated the Tender Years Hearsay Act ("TYHA"), 42 Pa.C.S. § 5985.1, by ignoring A.A.'s statements to Embry and Spencer that he was victimized by Father's physical and sexual abuse. Mother contends that, in discounting the child's accounts, the court conflated principles regarding the competency of a witness with those concerning credibility.

While Mother preserved the underlying claim regarding A.A.'s allegations in her Rule 1925(b) statement, the trial court did not confront the issue in its current configuration because Mother's present invocation of the TYHA is a novel argument that was never raised before the trial court. In actuality, the relevant hearsay statements regarding A.A.'s victimization were, in fact, admitted into evidence without objection. Thus, Mother's specific complaint regarding the supposed misapplication of the TYHA is not only waived but also baseless. *See* N.T., 10/16/14, at 141-146, 148-150; *id*. at 159-160, 162, 164; *see* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Nevertheless, in order to rectify Mother's confusion over the trial court's references to A.A.'s incompetence as a witness and to demonstrate Mother's misplaced reliance upon the TYHA, we address the merits of this contention, and for the reasons explained *infra*, we reject it.

The following facts are relevant to our disposition. During the PFA hearing, Mother proffered the testimony of her nearly three-year-old son regarding the alleged abuse. The trial court conducted an *in camera* interview with A.A. to determine whether he qualified as a competent witness. The child did not qualify as a witness, but the trial court permitted Mother to present two witnesses to recount A.A.'s hearsay statements. In exercising its fact-finding authority, the trial court determined that, while the witnesses testified credibly about what A.A. had told them, it could not place any weight on A.A.'s allegations because the child did not understand the duty to tell the truth, *i.e.* he was incompetent.

Mother's argument assails the trial court's reference to A.A.'s incompetence rather than a specific expression that the child lacked credibility. As Mother's argument is fairly abstract, we restate her position verbatim herein:

> Stated succinctly, the [t]rial [c]ourt erred as follows. The statements of [A.A.], as communicated through the testimony of Abigail Emery, Mary Spencer and Mother, came before the [c]ourt as evidence pursuant to the Tender Years Hearsay Act (TYHA"), 42 Pa.C.S.A. § 5985.1. At least as to Ms. Spencer and Ms. Emery, the [t]rial [c]ourt found them to be credible relators of the hearsay statements of A.[A.] concerning Father's abuse, but, the [t]rial [c]ourt improperly discounted the evidence of that abuse because [it] found [A.A.] to be incompetent to testify as a witness under Rule of Evidence 601. Such a determination is not, however, a prerequisite to the admission of hearsay statements under the TYHA.

Mother's brief at 33.

Thus, Mother argues that the trial court misapplied the TYHA under the premise that, having admitted the hearsay statements, the court was required to deem the declarant's statement credible. While Mother invokes the TYHA, which provides a statutory exception to the rule against hearsay, she challenges only the weight that the trial court assessed to A.A.'s hearsay statements. Indeed, conceding that the evidence was, in fact, admitted into evidence, Mother asserts "having admitted [the] statements into evidence under the [TYHA], then, having [deemed] . . . the witnesses who communicated those statements to be credible, the [t]rial [c]ourt had before it sufficient, un-contradicted evidence showing . . . that actionable abuse under the [PFA] Act had taken place." Mother's brief at 21.

The pertinent statute provides as follows:

§ 5985.1. **Admissibility of certain statements**

(a) General rule.--An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

- 8 -

(i) testifies at the proceeding; or

(ii) is unavailable as a witness.

42 Pa.C.S. § 5985.1.

As both the title and substance of the statute confirm, the TYHA addresses the admissibility of evidence. Nothing in the statute nor the concomitant case law suggests that, once admitted, the hearsay is binding on the trial court. The implication that the TYHA somehow negates the trial court's authority as the ultimate arbiter of fact is unfounded in the law. Herein, both Abigail Embry and Mary Spencer testified about A.A.'s comments to them regarding abuse. Upon review of this evidence, the trial court deemed the witnesses' testimony credible, *i.e.* that their recollection of A.A.'s expressions were true; however, based on the court's prior *in camera* interview with A.A., it found that the child's remarks to the witnesses were unreliable because he did not understand the duty to tell the truth. Accordingly, the trial court declined to place any weight on that evidence. It is beyond peradventure that the finder of fact is free to accept all, part, or none of the evidence presented to it. ***See Raker, supra***; ***Williamson***, ***supra*** (fact finder entitled to weigh evidence, assess credibility, and believe all, part, or none of the evidence). As the trial court's disposition in the case at bar is the product of this well-ensconced legal principle, we do not disturb it.

Moreover, we do not believe that the trial court's indication that it "found [A.A.] not to be competent," rather than expressing that he lacked credibility, to be tantamount to reversible error. **See** Trial Court Opinion, 1/28/15 at 8. In this regard, Mother's reliance upon **Commonwealth v. Walter**, 93 A.3d 442 (Pa. 2014), completely misses the mark. In **Walter**, our Supreme Court confronted the application of the TYHA based upon this Court's reversal of a trial court's decision to admit a child victim's hearsay statements under the TYHA. We concluded that the trial court erred in admitting the evidence because a magisterial district justice had previously determined the child was not competent to testify. In overruling this Court, the Supreme Court concluded, "we hold that a child need not be deemed competent to testify as a witness in order for the trial court to admit the child's out-of-court statements into evidence pursuant to the TYHA." **Walter supra**, at 453.

Instantly, despite Mother's protestations to the contrary, the trial court's disposition in the present case was consistent with our High Court's holding in **Walter**. Regardless of A.A.'s patent incompetency, the trial court, like the trial court in **Walter**, declined to bar the child declarant's out-of-court statements regarding abuse. While the fact-finder in **Walter** made the additional credibility determination in the declarant's favor, neither **Walter** nor the TYHA required the trial court to accept the properly admitted hearsay statements as irrefutable fact. Notwithstanding the trial court's

- 10 -

reference to competency rather than credibility in the Rule 1925(a) opinion, the trial court plainly determined that A.A.'s comments were unreliable.

In sum, since the pertinent hearsay statements were admitted into evidence without objection, and the trial court remains the ultimate arbiter of fact, we reject Mother's assertion that the trial court erred in discounting A.A.'s allegations of abuse.

Order affirmed.

Judge Musmanno joins the memorandum.

President Judge Emeritus Ford Elliott concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/19/2016

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
### FAMILY DIVISION

M█████ A█████,

        PLAINTIFF

VS.

M█████ G█████,

        DEFENDANT

NO. F.D. 13-1728-006
1861 WDA 2014

### OPINION

Kim D. Eaton, Judge

Date _1-28-15_

Plaintiff M█████ G█████ ("Mother") appeals this Court's Order dated October 16, 2014 dismissing her Protection from Abuse petition (PFA).

Mother and defendant M█████ A█████ ("Father") are parents of two minor children. They have a daughter, E█████ A█████ (E████), born on July 20, 2004 and a son, A█████ A█████ (A██) born on November 21, 2011. They are currently involved in a bitter custody dispute. On October 7, 2014, Mother filed a PFA against Father which contained allegations of abuse against both children. Although Mother filed the PFA on her behalf, there are no allegations of abuse against her in the PFA. Mother alleged that Father made E████ jump rope 250 times while recovering from a concussion and made her change clothes in front of him. Mother averred that A██ "has been acting out inappropriately in words and actions, which lead me to fear he is being

2

abused both physically and sexually." She further averred that A█████ "discussed that dad hit him and said he would burn our home down." The abuse was alleged to be ongoing with the most recent occurring on October 2, 2014. At the time, A██ was 2 years old and in diapers. A temporary PFA was entered excluding Father from Mother's residence pending a final hearing. The matter was referred to the Allegheny County Police Department and the Allegheny County Office of Children, Youth, and Families (CYF) for investigation.

A hearing on the final PFA was held on October 16, 2014. The Court heard testimony from court appointed psychologist, Dr. McGroarty, Abigail Emery (Emery), Mary Spencer (Spencer) and Mother. At Mother's request, the Court interviewed A██ in camera to see if he could be qualified as a competent witness. He could not be qualified. All testimony and evidence offered at the hearing was directed to abuse of A██. There was no evidence or testimony to support the allegations of abuse against E████ or ongoing abuse against Mother. At the conclusion of the hearing, the Court issued an order dismissing the PFA. Mother timely appealed, and, in response to an Order issued pursuant to Pa.R.A.P. 1925(b), filed a Concise Statement of Matters Complained of on Appeal raising the following issues:

1. The trial court erred in failing to enter a PFA on behalf of Mother based on the evidence.

2. The trial court erred in failing to enter a PFA on behalf of A██ based on the evidence.

3. The trial court erred in failing to enter a PFA on behalf of A██ based on evidence that Father committed abusive acts against Mother and A██.

3

4. The trial court erred by concluding that A⬛ was not a competent witness.

5. The trial court erred by failing to enter a PFA despite finding Mother's witnesses (A⬛'s nanny and her cousin) credible.

6. The trial court erred when it disregarded credible testimony and evidence of abuse.

7. The trial court erred when it failed to find Mother's evidence sufficient for a final PFA.

8. The trial court erred by considering Mother's prior PFA and the pending custody litigation in ruling on this PFA.

With respect to the first and third matters, there were no allegations of abuse against Mother in the PFA and no such evidence at the hearing.

The remaining matters are addressed to Mother's complaint that the Court erred by finding insufficient evidence of abuse and dismissing the PFA. A temporary PFA may be entered solely based on allegations. However, before a final PFA may be entered, the petitioner must prove that the allegations are true by a preponderance of the evidence. 23 Pa.C.S.A. 6107(a). Mother alleged that she "feared" Father was abusing A⬛ sexually and physically. Her fear, and the testimony of all witnesses, emanated from A⬛'s behavior and things he said. Neither Mother nor any witness observed abuse or saw physical evidence to support A⬛'s statements.

The Court placed great weight on the report and testimony of Dr. McGroarty. Dr. McGroarty had extensive interaction with the parties and the children. He spent more time than usual with them due to the complex custody situation and the history of conflict. He interviewed the children when they were with Mother and when they were

4

with Father. He interviewed the children's therapist, the sheriffs who supervised Father's visitation, Abigail Emery, the nanny, and maternal grandmother. He reviewed emails between the parties, medical documents and the results of psychological testing of the parents. Mother wants to eliminate or limit Father's visits with the children as she feels he is neglectful, angry, and potentially violent. Mother is critical of every aspect of his parenting. (Tr. 16-17). Dr. McGroarty's first report dated March 5, 2014 is addressed to matters relating to custody. He found Mother's opinions to be inconsistent with his assessment and observations of Father and his interaction with the children. (Tr. 18)

In his second report dated October 6, 2014, Dr. McGroarty noted that E██████ had become increasingly estranged from Father. He concluded that Mother had been successful in conveying to B████ her own negative feelings toward Father. Dr. McGroarty interviewed the children again on September 21, 2014 and September 24, 2014. He saw no evidence or indication that the children were being abused. (Tr. 38). Dr. McGroarty was unable to corroborate the stories Mother told him about Father. (Tr. 25). One such story was that Father punched A███ in the face and injured his tooth. Mother testified that A███ complained of pain in his tooth on August 20, 2014 so she took him immediately to the dentist. A███ had last been with Father on August 15, 2014. The dental hygienist was deposed and testified that she heard Mother telling A███ to say that Father hit him in the mouth. (Tr. 45). Emery and Spencer gave contradictory testimony about the decision to take A███ to the dentist. Mother refused to sign a release for Dr. McGroarty to speak to the dentist. (Tr. 43).

While the family was living in Turkey, Father and maternal grandmother were concerned about Mother and attempted to have her admitted to a hospital for

5

psychological evaluation. According to Dr. McGroarty, this is the basis for Mother's fear and anger against Father. Mother lodged accusations against Father spanning nearly every aspect of his life, none of which have been substantiated. While Dr. McGroarty acknowledged that Father made some mistakes with Mother, he found no basis for Mother's fear that Father will hurt the children. Dr. McGroarty found Father to be a good parent who interacts well with the children and deeply cares about them. He witnessed A█ and Father interacting comfortably with no sign of any fear during visits in which Mother alleged abuse occurred. Dr. McGroarty believes that it is in the best interest of the children to have a close relationship with Father.

Emery testified that on October 2, 2014, A█ told her that Father kicked him in the back and face, put sand in his bum, "puts his pee pee in my bum" and made some other outrageous statements. (Tr. 141). Emery called Mother at work and they went immediately to Pittsburgh Action Against Rape (PAAR), filed a police report and took A█ to Children's Hospital Emergency Room. He received a complete examination, including a rectal and genital exam, all of which were normal. There was no physical evidence to substantiate any of the things A█ said. (Tr. 150). The last time A█ had been with Father was on September 21, 2014, roughly ten days earlier. (Tr. 153). During that time period, neither Mother nor Emery saw any physical evidence of harm.

Spencer, Mother's cousin, visited with the family during the last week of August and from October 13th to time of trial. She witnessed an exchange between A█ and Father in which A█ was agitated and did not want to go. (Tr. 160). She saw A█ playing inappropriately with a loofah sponge during a bath and heard him say that Father touched his bottom. (Tr. 162). Spencer testified to a conversation between A█ and

6

Mother in October in which A⬛ said his dad touches his privates. (Tr. 164). She never saw any marks or bruises on A⬛ to support this. (Tr. 169).

Mother testified that she believed sexual abuse by Father had been ongoing for some time and that the comments A⬛ made to Emery on October 2, 2014 indicated that were increasing. (Tr. 198). She referred to phone calls and text messages with E⬛ during visits with Father in which E⬛ heard A⬛ crying but was locked out of the room. There are no locks on the doors where the visitation occurred. The vast majority of Mother's testimony against Father was relevant to custody, but had nothing to do with the allegations in the PFA. Much of Mother's testimony was a regurgitation of her testimony in the previous PFA which was dismissed by this court. Simply put, Mother is not a credible witness.

Mother offered A⬛ as a witness to testify to the matters in the PFA. When a child of that age is called to testify, the child's competency must be independently established. Commonwealth v. Bailey, 469 A.2d 604 (Pa. Super 1983). The Court is to ask the witness questions to extract his capacity to communicate, including the ability to understand questions framed and express intelligent answers, his mental capacity to remember and communicate about the matter at hand and have a consciousness of the duty to speak the truth. Commonwealth v. Dowling, 883 A.2d 570 (Pa. 2005).

The Court conducted an in camera interview of A⬛ with Emery and counsel for both parties present. When asked by the Court if she said there is a cat on her head would that be true, he answered "yes." When the Court asked him if he understood why he was there, he said it was because Father used bad words like "stupid." He said Father punched him and kicked him in the back and the tummy. He said someone told him to

7

say that. He also said Father was fun, that he liked going with his dad and he was not afraid of him. At the conclusion of the interview, it was obvious that A▇▇ could not be qualified as a competent witness. Mother's counsel was present and did not ask for additional questioning or raise any objection to the Court's competency determination.

The Court found that Emery and Spencer credibly testified to what A▇▇ told them. However, the Court found A▇▇ not to be competent.

CYF investigated reports that Father punched A▇▇ in the mouth chipping his tooth and that Father put sand in A▇▇'s penis and put his penis in A▇▇'s butt. CYF submitted a report dated October 15, 2014 finding these reports not to be founded.

The allegation in the PFA is that Mother feared A▇▇ was abused on October 2, 2014. Physicians at Children's Hospital examined him and found no sign of abuse. The CYF caseworker interviewed A▇▇ on October 3, 2014 and he made no disclosure of sexual maltreatment by his Father. The Allegheny County Police similarly conducted an investigation into Mother's allegations and found nothing to substantiate them.

At the conclusion of the hearing, the Court determined that there was insufficient evidence to enter a final PFA against Father. The allegations rest entirely on statements made by a 2-year-old child who was determined not be a competent witness.

For the foregoing reasons, the Court dismissed the PFA.

By the Court,

_____ J.
Judge Kim D. Eaton

8