**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DONALD F. SMITH | |
| Appellant | No. 1967 WDA 2014 |

Appeal from the PCRA Order August 22, 2014
in the Court of Common Pleas of Venango County Criminal Division
at No(s):CP-61-CR-0000733-2007

BEFORE: GANTMAN, P.J., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED SEPTEMBER 27, 2016**

Appellant, Donald F. Smith, appeals *pro se* from the order entered in the Venango County Court of Common Pleas, denying his first Post Conviction Relief Act[1] ("PCRA") petition after a hearing.  Appellant presents numerous claims of ineffective assistance of counsel.  Additionally, Appellant claims that PCRA counsel was ineffective and asserts that the PCRA court erred in permitting PCRA counsel to withdraw.  We affirm.

The evidence underlying Appellant's convictions is relatively straightforward.  Appellant and a co-defendant, Shane Carey, confronted the complainant, Ian Jordan, about money Jordan owed Appellant.  Appellant and co-defendant then drove Jordan in Carey's car, verbally threatened him,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S §§ 9541-9546.

and physically struck him. When the car came to a stop sign, Jordan fled into a nearby cornfield. Appellant and Carey chased Jordan on foot, and Carey tackled him. Appellant and Carey proceeded to assault Jordan in the field. Afterwards, Appellant and Carey returned to the car and left the scene. Jordan walked back to the roadway and received assistance from a passing motorist, who called 911. Jordan did not immediately report the incident. Jordan reported the encounter to the police later in the day and stated he was "pistol-whipped." He later stated that Appellant held a knife to his throat when they were in the car.

Officers obtained a warrant to search Appellant's residence. The warrant listed Appellant's business address, but a detective testified at trial that he telephoned the magisterial district magistrate with the correct address for Appellant's residence. During the search, officers discovered a small amount of marijuana, paraphernalia related to the use of marijuana, a white powder on a plate, and a black, flip-type, locking blade knife. A detective testified at trial that the knife was capable of being opened with a motion of the wrist. Officers obtained a second search warrant for drug evidence and recovered a prescription bottle of dihydrocodone and one tablet of hydromorphone. The powder initially observed by the officers was determined to be dihydrocodone. Appellant was taken into custody and denied involvement in an altercation with Jordan during a videotaped interrogation. The videotape of Appellant's interrogation was played at trial.

Subsequently, Appellant and Jordan were confined at the same jail. Jordan asserted that Appellant, both personally and through other inmates, threatened him and offered him money not to testify.

Appellant was charged as follows. As to the initial incident involving Appellant, Carey, and Jordan, Appellant was charged with kidnapping,[2] conspiracy,[3] aggravated assault,[4] simple assault,[5] coercion,[6] possession of a an instrument of crime,[7] recklessly endangering another person,[8] and terroristic threats.[9] As to the contraband discovered during the search of his residence, Appellant was charged with possession with intent to use drug paraphernalia[10] and possession of a small amount of marijuana.[11] Appellant

_____

[2] 18 Pa.C.S. § 2901(a)(3).

[3] 18 Pa.C.S. § 903.

[4] 18 Pa.C.S. § 2702(a)(1).

[5] 18 Pa.C.S. § 2701(a)(1), (3).

[6] 18 Pa.C.S. § 2906(a)(1).

[7] 18 Pa.C.S. § 907(b).

[8] 18 Pa.C.S. § 2705.

[9] 18 Pa.C.S. § 2706.

[10] 35 P.S. § 780-113(a)(32).

[11] 35 P.S. § 780-113(a)(31)(ii). Appellant was not charged with possession of the prescription substances.

was also charged with intimidation of a witness[12] for the alleged interactions at the prison. The charges were consolidated for the purposes of trial.

Appellant was initially represented by Michael Antkowiak, Esq., who undertook plea negotiations with the Commonwealth. The trial court withdrew its assent to the plea agreement before sentencing. *See* N.T., 3/25/08, at 18. Subsequently, Appellant was represented by Wayne Hundertmark, Esq. ("pretrial counsel"). On January 20, 2009, the court appointed D. Shawn White, Esq. ("trial counsel") to represent Appellant.

Jury selection commenced on March 9, 2009, and trial began on March 16, 2009. On March 21, 2009, the jury found Appellant guilty of one count each of kidnapping, criminal conspiracy, possession of a weapon, terroristic threats, possession with intent to use drug paraphernalia, and simple assault. The jury acquitted Appellant of aggravated assault, criminal coercion, recklessly endangering another person, and intimidation of a witness. The trial court separately found Appellant guilty of possession of a small amount of marijuana.

On April 15, 2009, the trial court sentenced Appellant to an aggregate term of ten to twenty years' imprisonment and a consecutive five-year term of probation. The court's sentence was based on the imposition of a mandatory "second strike" sentence for kidnapping. *See* 42 Pa.C.S. § 9714.

---

[12] 18 Pa.C.S. § 4952.

Appellant timely appealed, and this Court affirmed. *Commonwealth v. Smith*, 901 WDA 2009 (Pa. Super. Mar. 14, 2011), *appeal denied*, 325 WAL 2011 (Pa. Sept. 27, 2011). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on September 27, 2011. Trial counsel represented Appellant during his direct appeal.

Appellant filed a timely *pro se* PCRA petition, which the court received on December 13, 2011.[13] Appellant subsequently filed a supplemental *pro se* petition on December 13, 2012.[14] The court appointed counsel, who did not amend Appellant's petition. Appellant, represented by Jason R. Lewis,

---

[13] In his initial *pro se* petition, Appellant raised numerous claims based on (1) the trial court's questioning of witnesses and highlighting of evidence during its instructions to the jury, (2) the Commonwealth's elicitation of false testimony from its witnesses, suppression of favorable evidence, "coaching" of its witnesses, misstatement of the evidence in its opening and closing argument, and interjection of its personal beliefs regarding the credibility of its witnesses and Appellant's bad character in its closing argument, (3) the playing of his videotaped statement to police in which the officer referred to his prior record and he invoked his right to counsel, (4) the Commonwealth's and the witnesses' referencing of his prior bad acts, namely, evidence that he previously assaulted Jordan with a retractable baton, (5) trial counsel's refusal to accept the trial court's offer to instruct the jury that Carey could be considered a "corrupt source," (6) trial counsel's stipulation to the foundation for and the admission of evidence, (7) trial counsel's failure to seek suppression of the search warrant, and (8) the seating of Juror 8, the foreperson of the jury, who was an editor of a newspaper that ran numerous stories regarding the incident.

[14] In his supplemental *pro se* PCRA petition, Appellant added claims based on (1) the immunity agreement extended to Jordan, (2) the imposition of sentence based on two inchoate offenses, and (3) ineffectiveness of counsel during plea negotiations.

Esq. ("PCRA counsel"),[15] proceeded to several evidentiary hearings conducted on December 12, 2012, April 30, 2013,[16] and June 4, 2013, at which Appellant and all prior counsel testified.[17]   Meanwhile, trial counsel campaigned for election as the Venango County District Attorney.  Trial counsel was elected in November 2013.

On June 5, 2014, PCRA counsel filed a petition to withdraw and a no-merit brief,[18] which purported to list and discuss the issues raised in Appellant's *pro se* initial and supplemental petitions.  Appellant received an extension of time and filed a *pro se* objection to the no-merit brief on June 26, 2014.  He asserted PCRA counsel's brief was defective based on the "second prong of **Finley**," namely, failing to review all issues he wished to raise.  **See Finley**, 550 A.2d at 215.  Appellant asserted PCRA counsel also

---

[15] The PCRA court initially appointed Matthew C. Parson, Esq., vacated its appointment of Attorney Parson, and appointed Attorney Lewis on December 16, 2011.

[16] Appellant, at the beginning of the second hearing on April 30, 2013, asserted PCRA counsel was ineffective and alleged a conflict of interest because he believed trial counsel had become District Attorney.  Appellant withdrew his request for new counsel when confronted with the alternative of proceeding *pro se* with standby counsel.  The PCRA court also noted that trial counsel was running for District Attorney, but the primary elections had yet to occur.

[17] Additionally, Sergeant Merle Giesey of the Venango County Sherriff's Office testified regarding a meeting between the Assistant District Attorney and Appellant.

[18] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

erred because there was merit to his issues regarding (1) trial counsel's refusal of a corrupt source instruction, (2) trial counsel's stipulations to evidence, (3) a conflict of interest based on trial counsel's election to District Attorney, (4) the Commonwealth's opening and closing statement, and (5) the illegal imposition of a mandatory minimum sentence. Appellant developed one issue through the framework of PCRA counsel's ineffectiveness, namely, trial counsel's rejection of the trial court's offer to issue a corrupt source instruction. Appellant requested that the PCRA court deny PCRA counsel's request to withdraw or appoint new counsel.

On August 22, 2014, the PCRA court denied Appellant's petition and granted PCRA counsel's motion to withdraw. Appellant filed a timely notice of appeal on September 8, 2014. The PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied.[19]

Appellant continued to allege that PCRA counsel failed to send him a complete record to develop his claims on appeal. On June 8, 2015, Appellant also filed an application for relief alleging a material conflict of interest based on trial counsel's election to District Attorney. On July 21, 2015, this Court remanded the case to the trial court to ensure Appellant received the PCRA hearing transcripts. On August 8, 2015, the Office of the

---

[19] Appellant's *pro se* Rule 1925(b) statement was identical to his questions presented on appeal listed below.

Attorney General entered its appearance on behalf of the Commonwealth.

This appeal followed.

Appellant presented the following questions on appeal:

Whether the lower court abused its discretion in finding that Appellant was not deprived of his substantive rights pursuant to the Sixth (6th) and Fourteenth (14th) U.S.C.A. and/or Article 1, § 9 rights under the Pennsylvania Constitution to effective assistance of counsel on direct appeal and Appellant's rule based right to effective assistance of counsel on initial-review collateral proceedings that raises a distinct legal ground of ineffective assistance of counsel for PCRA review of ineffective assistance of counsel pursuant to the following claims that have merit[:]

I. Layered ineffective assistance of counsel where [trial/direct appeal] counsel was ineffective where the Superior Court found all of Appellant's issues waived on direct appeal and PCRA counsel was ineffective for failing to competently litigate the claim?

II. Layered ineffective assistance of counsel for trial counsel failing to accept a corrupt and polluted source jury instruction and failing to competently bring forth the claim?

III. Layered ineffective assistance of counsel for failing to file a pre-trial suppression motion on an invalid search warrant and failing to competently litigate the claim?

IV. Layered ineffective assistance of counsel for failing to raise the sufficiency of the evidence and failing to litigate the claim?

V. Layered ineffective assistance of counsel for failing to raise a biased juror claim where the Editor of the local newspaper published nine (9) front page stories of Appellant's case and was sitting as the jury foreman for failing to litigate the claim?

VI. Layered ineffective assistance of counsel for failing to competently litigate the immunity claim of the victim where [Appellant's] jury was not made aware of this immunity and where the victim had convictions of *crimen falsi*?

VII. Layered ineffective assistance of counsel for failing to competently litigate the prosecutor's fraud upon the court denying a meeting ever took place that is contrary to a Venango County Sheriff's PCRA testimony (Pgs. 125-130, PCRA notes of testimony contrary to the District Attorneys fraudulent assertions of the hearing held March 6, 2009, pgs. 3-5, 7) as well as prosecutorial overreaching characterizing Appellant as a "loan shark"?

VIII. Layered ineffective assistance of counsel for failing to litigate a conflict of interest of the District Attorney who was Appellant's trial attorney mandating intervention by the State Attorney [General's] Office?

[IX.] Whether Appellant's PCRA counsel was ineffective for failing to provide the *pro se* Appellant with day one (1) and four (4) of the PCRA notes of testimony so that Appellant can competently litigate his claims on appeal where [PCRA] counsel filed a "no-merit" [brief] upon Appellant?

Appellant's Brief at 4-5.[20]

Preliminarily, we note that Appellant suggests challenges to (1) PCRA

---

[20] Appellant's brief does not conform with Pa.R.A.P. 2119(a), which requires that "the argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein." Pa.R.A.P. 2119(a). This defect does not preclude meaningful review of his claims or arguments. We will address Appellant's issues in a different order than suggested by his statement of questions presented.

counsel's failure to provide him complete copies of the PCRA hearing transcripts, (2) PCRA counsel's failure to assert a conflict of interest based on trial counsel's election as District Attorney, and (3) trial counsel's ineffectiveness for failing to challenge the sufficiency of the evidence on direct appeal. *See id.* at 4-5. However, Appellant later asserts the first two challenges are "moot." *See id.* at 62. Moreover, Appellant developed a challenge based on the sufficiency of the evidence for the first time in his Pa.R.A.P. 1925(b) statement. *See* Pa.R.A.P. 302(a); *Commonwealth v. Fletcher*, 986 A.2d 759, 794 (Pa. 2009) (holding claims of ineffectiveness cannot be raised for first time on appeal). In any event, he did not set forth an argument regarding the merits of that claim in his brief. *See Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014). Accordingly, these three issues are waived, and we decline to consider them in this appeal.

In the remainder of his *pro se* brief, Appellant contends that the PCRA court erred in accepting PCRA counsel's no-merit brief and denying PCRA relief. Appellant's Brief at 11. He argues that he is entitled to a remand for the appointment of new PCRA counsel or a new trial based on the following issues:

> (1) trial counsel's failure to impeach Jordan by referencing an order granting him immunity, *id.* at 57-62;
>
> (2) trial counsel's refusal of a corrupt source jury instruction regarding his codefendant Shane Carey, who testified for the Commonwealth, and the failure to have

the trial court issue the same instruction regarding the complainant Ian Jordan, *id.* at 12-22;

(3) trial counsel's failure to object to or challenge a pattern of prosecutorial misconduct—including (a) the trial court's denial of a discovery motion based on an alleged fraudulent representation that the prosecutor did not meet with Appellant and Detective Baughman before trial, *id.* at 43-49, (b) the Commonwealth's failure to disclose a police file to link Appellant to codefendant Carey during the police investigation, *id.* at 64, (c) the alleged coaching of witnesses, *id.* at 49, 64-65, (d) the prosecutor's opening statement that painted Appellant as a "bad person," *id.*, (e) the prosecutor's closing argument that Appellant was a "loan shark," *id.* at 49-50, and (f) the prosecutor's discussion of her own medical condition during closing arguments, *id.* at 51-55;

(4) trial counsel's failure to object to the trial court's questioning of witnesses and summation of the evidence during the jury charge, *id.* at 70;

(5) trial counsel's failure to strike Juror 8, the foreperson of the jury, who was an editor at newspapers that published stories about the case before trial, *id.* at 23-32

(6) trial counsel's failure to seek suppression of the evidence seized under the search warrants for his residence, *id.* at 33-43; and

(7) trial counsel's ineffectiveness on direct appeal; *id.* at 63, 66-69.

The standards for reviewing the PCRA court's denial of a PCRA claim are as follows:

> [A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed

in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Charleston*, 94 A.3d 1012, 1018-19 (Pa. Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014) (some citations omitted).

When reviewing the PCRA court's decision to relieve counsel from representation of a petitioner, we consider the following principles. A PCRA petitioner has a rule-based right to counsel in a first PCRA proceeding. *Commonwealth v. Figueroa*, 29 A.3d 1177, 1180 (Pa. Super. 2011). Generally, counsel's duty is either to amend a *pro se* petition or to seek withdrawal from representation if he finds no merit to the petition. *Commonwealth v. Karanicolas*, 836 A.2d 940, 946 (Pa. Super. 2003). "The *Turner*/*Finley* decisions provide the manner for post-conviction counsel to withdraw from representation." *Commonwealth v. Rykard*, 55 A.3d 1177, 1184 (Pa. Super. 2012). Under *Turner*/*Finley*,

> [i]ndependent review of the record by competent counsel is required before withdrawal is permitted. Such independent review requires proof of:
>
> 1) A "no-merit" letter by PC[R]A counsel detailing the nature and extent of his review;
>
> 2) The "no-merit" letter by PC[R]A counsel listing each issue the petitioner wished to have reviewed;
>
> 3) The PC[R]A counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;
>
> 4) The PC[R]A court conducting its own independent review of the record; and

> 5) The PC[R]A court agreeing with counsel that the petition was meritless.[21]

***Commonwealth v. Widgins***, 29 A.3d 816, 817-18 (Pa. Super. 2011) (citations omitted).  This Court has concluded that a claim based on legal error in PCRA counsel's withdrawal from representation, "although necessarily discussing PCRA counsel's alleged ineffectiveness, is not an ineffectiveness claim."  ***Rykard***, 55 A.3d at 1184.

As to claims of ineffectiveness, it is well settled that

> [c]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him.   In Pennsylvania, we have refined the ***Strickland*** [***v. Washington***, 466 U.S. 668 (1984)] performance and prejudice test into a three-part inquiry.  Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result.  ***See*** [***Commonwealth v.***] ***Pierce***[, 527 A.2d 973 (Pa. 1987)].  If a petitioner fails to prove any of these

---

[21] Additionally,

> PCRA counsel seeking to withdraw contemporaneously [must] forward to the petitioner a copy of the application to withdraw that includes (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel.

***Widgins***, 29 A.3d at 818 (citations omitted).  Instantly, there is no dispute that Appellant was provided with a copy of PCRA counsel's no-merit brief and was aware of his right to proceed *pro se*.

prongs, his claim fails. Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Charleston*, 94 A.3d at 1019 (some citations omitted).

Additionally, the presentation of "layered" claim of ineffectiveness is required "to preserve and prove a PCRA claim challenging the effectiveness of counsel other than immediate prior counsel." *Commonwealth v. McGill*, 832 A.2d 1014, 1021 (Pa. 2003). When a PCRA action was pending before *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (holding claims of ineffectiveness of trial counsel should be raised for the first time in the first PCRA petition), "layering" required that

a petitioner . . . plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action. In addition, a petitioner must present argument, in briefs or other court memoranda, on the three prongs of the *Pierce* test as to each relevant layer of representation.

*McGill*, 832 A.2d at 1023; *see id.* at 1021 n.13. Following *Grant*, it appears a petitioner must object and present a layered claim to assert that

- 14 -

he was entitled to a new trial based on PCRA counsel's ineffectiveness regarding a claim of trial counsel's ineffectiveness. *See Rykard*, 55 A.3d at 1189-90. Nevertheless, PCRA counsel cannot be ineffective if trial counsel was not ineffective. *See id.* at 1190; *see also McGill*, 832 A.2d at 1023.

All claims must be preserved properly in the PCRA court in the first instance. *See* Pa.R.A.P. 302(a); *Fletcher*, 986 A.2d at 794; *Commonwealth v. Pitts*, 981 A.2d 875, 880 (Pa. 2009) (concluding this Court erred in reviewing sufficiency of "no-merit" letter *sua sponte* when defendant raised no such issue). Furthermore, although a court will construe a *pro se* filing liberally, a *pro se* party is responsible for following the applicable rules of procedure and will be afforded no special treatment. *See Blakeney*, 108 A.3d at 766; *In re Ullman*, 995 A.2d 1207, 1211-12 (Pa. Super. 2010).

Appellant's first issue focuses on the grant of immunity to Jordan on the day Appellant's trial began. Appellant alleges that the Commonwealth conducted a "trial by ambush" and the trial court should have conducted a pre-trial hearing on whether to grant Jordan immunity. Appellant also asserts trial counsel was ineffective for failing to impeach Jordan using the grant of immunity. Additionally, Appellant refers to trial counsel's alleged failure to impeach Jordan using his convictions for *crimen falsi*. We conclude Appellant is not entitled to relief.

The Immunity Act provides, in relevant part:

**§ 5947.  Immunity of witnesses**

**(a)   General rule.—**Immunity orders shall be available under this section in all proceedings before:

(1)   Courts.

*     *     *

**(b)   Request and issuance.—**The Attorney General or a district attorney may request an immunity order from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:

(1)  the testimony or other information from a witness may be necessary to the public interest; and

(2)  a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

42 Pa.C.S. § 5947(a)(1), (b).   Thus, "courts have no power to grant immunity except on request of the prosecutor." **Commonwealth v. Hall**, 867 A.2d 619, 634 (Pa. Super. 2005) (quoting **Commonwealth v. Johnson**, 487 A.2d 1320, 1322 (Pa. 1985) (internal quotation marks omitted)).

The Immunity Act does not require an adversarial proceeding in which the Commonwealth presents evidence to establish a need for immunization. **See In re Martorano**, 346 A.2d 22, 25 (Pa. 1975).  Rather, the "hearing" requirement is met "if the Commonwealth establishes to the satisfaction of the court, in a manner satisfactory to the court, that immunization is necessary." **Id.** at 25-26 (citation omitted).

Instantly, Jordan testified at trial that he and Appellant were "both involved with drugs" and "kind of had some of the same friends." N.T. Trial, 3/19/09, at 30. Jordan asserted that Appellant "had given $75.00 to a friend of his that was supposed to get him some Oxycontin. I was supposed to get that for him." *Id.* at 33. That debt was the alleged motive for the kidnapping and assault.

Trial counsel did not raise the issue of immunity, but cross-examined Jordan and elicited his concession that he did not tell police everything about the alleged transactions leading to the debt. *Id.* at 70-71. Counsel also attempted to impeach Jordan based on Jordan's use of methadone, as well as cocaine, marijuana, and Valium. *Id.* at 58. Counsel highlighted Jordan's inconsistent statements, including the fact that Jordan initially reported he was "pistol whipped," as well as his inability to recall details of the events. *Id.* at 62. Additionally, counsel introduced evidence of Jordan's *crimen falsi*, which included convictions for theft by deception, bad checks, and theft by receiving stolen property. *Id.* at 79-81.

At the PCRA hearing, trial counsel testified regarding the immunity issue as follows:

> [Commonwealth]. Do you recollect any conversation between yourself and [Appellant] about this particular granting of immunity [for the victim, Ian Jordan]?
>
> A. I think I remember a conversation about it. Specifics, no. I don't remember the specifics on this. I think what I told [Appellant] was . . . that Ian is probably pretty nervous about having to get up and talk about a drug

transaction and wants to make sure he is not charged with it by his own testimony and that it still falls under the category of me attacking Ian Jordan personally from start to finish on his credibility.

Q. Did you in fact attack Ian about the drug transactions on cross?

A. I am certain if I was aware of it I would have, yes. What I really wanted to attack on Mr. Jordan—and this is what I felt—that on the day the incident occurred he was at the hospital coming in and out of consciousness, not due to injuries he received, but due to the drugs that he was under at the time. Drugs played a really vital role in the defense because I believe Ian Jordan was a user, and therefore his credibility.

N.T. PCRA Hr'g, 4/30/13, at 97-98.

On cross-examination by PCRA counsel, trial counsel testified:

A. [T]here were certain features of this trial that although [Appellant] thought important, for my strategy purposes in front of this jury, [Jordan's] granting of immunity really was not important. I don't even know why immunity was granted quite honestly. If I looked at that motion and understood why he was even requesting it, it was beyond me. The credibility of Ian Jordan was already being attacked by the information that we had. His granting of immunity I thought would have just confused the jury even further as to the point we were trying to drive home.

Q. You wouldn't agree with the notion that perhaps letting [the jury] know that [Mr. Jordan] had asked for immunity would help impinge his credibility?

A. No. No, I thought his credibility was shot in a number of different ways before we even got to that, so no. I'm not surprised I didn't ask anything about the immunity. . . . So no, I don't believe it would have furthered the case anyway.

N.T. PCRA Hr'g, 6/4/13, at 72-73.

- 18 -

Contrary to Appellant's contention, a formal hearing is not required to confer immunity to Jordan. *See In re Martorano*, 346 A.2d at 25. Additionally, trial counsel had at least some basis to support his theory that the issue of immunity for discussing the alleged debt to Appellant for a drug transaction would have confused the jury given the other impeachment evidence, *i.e.*, Jordan's drug use, prior inconsistent statements, exaggerations, and *crimen falsi*. Moreover, under the circumstances of this case, we discern no basis to conclude that the issue of immunity, which related back to Jordan's testimony regarding an unrequited drug transaction, so affected Jordan's credibility that it would have altered the outcome at trial. Lastly, Appellant's suggestion that trial counsel failed to raise Jordan's *crimen falsi* convictions is belied by the record. Accordingly, trial counsel's representation did not amount to ineffectiveness, and we discern no error in the PCRA court's independent review of this issue. *See Charleston*, 94 A.3d at 1019; *Rykard*, 55 A.3d at 1184.

Appellant's second issue focuses on trial counsel's failure to accept the trial court's offer to give a corrupt source jury instruction. He asserts that he was entitled to a corrupt source instruction as to co-defendant Shane Carey, trial counsel had no basis to reject the instruction, and that the outcome would have been different had the jury been informed that it should view Carey's testimony with caution. Additionally, Appellant suggests trial counsel should have requested the same instruction with respect to the

complainant Ian Jordan's testimony. No relief is due.

> [I]t is well established that, in any case in which an accomplice implicates the defendant, the [judge] should instruct the jury that the accomplice is a corrupt and polluted source whose testimony should be considered with caution. A corrupt-source instruction is warranted where sufficient evidence is presented as to whether the witness is an accomplice. An individual is an accomplice if, with intent to promote or facilitate the commission of the offense, he solicits, aids, agrees, or attempts to aid another person in planning or committing the offense.

*Commonwealth v. Treiber*, 121 A.3d 435, 459 (Pa. 2015) (internal citations and quotation marks omitted). "The 'corrupt source' charge in particular is designed specifically to address situations where one accomplice testifies against the other to obtain favorable treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution." *Commonwealth v. Smith*, 17 A.3d 873, 906 (Pa. 2011).

Instantly, the trial court offered to instruct the jury that Carey was a corrupt source, but trial counsel rejected the instruction in favor of a general instruction on credibility. N.T. Trial, 3/20/09, at 8-10. During closing argument, trial counsel argued one of the relevant decisions for the jury was its choice to credit Carey's or Jordan's testimony. N.T. Trial Excerpts, Opening, Closing & Charge, 3/16/09, 3/17/09 & 3/20/09, at 52. Trial counsel insisted Carey's testimony was more credible than Jordan's. Trial counsel argued Carey's own testimony established that Jordan voluntarily entered Carey's car, Carey was the principal assailant, and Appellant could

be guilty of simple assault, but not aggravated assault. *Id.* at 46-52.

At the PCRA hearing, trial counsel further explained his decision to refuse the corrupt source instruction.

> The corrupt and polluted source, I [did not] want Shane Carey to be a corrupt and polluted source. I felt there were certain portions of his testimony that were going to be helpful to my client that were I think stronger than Ian Jordan's testimony, so I didn't want him to be corrupt and polluted. Mr. Carey actually gave comments during the trial and I believe he was a Commonwealth witness if I remember correctly, but I was still about to elicit certain testimony that was helpful to the defense. I wanted him to be as credible as could be for the benefit of the jury. I didn't want him to be corrupt and polluted.

N.T. PCRA Hr'g, 4/30/13, at 91.

As to Jordan, Appellant suggests that because Jordan admitted he was involved in some wrongdoing, he must have been an accomplice in the crimes. However, there was no evidence that Jordan acted as an accomplice to his alleged kidnapping and assault or the subsequent interactions at prison.

The PCRA court denied relief on this issue by finding that trial counsel stated a reasonable basis for declining a corrupt source instruction with respect to Carey. We conclude that the court's findings were supported by the record and its determination was free of legal error. *See Charleston*, 94 A.3d at 1018-19. Moreover, we conclude that Appellant has failed to establish arguable merit to his assertion that he was entitled to a corrupt source instruction with respect to Jordan. *See Treiber*, 121 A.3d at 459.

Thus, we discern no error in the PCRA court's review of this issue. *See Rykard*, 55 A.3d at 1184.

Appellant, in his third issue, raises six sub-issues that the Commonwealth engaged in a pattern of misconduct that perpetrated a fraud against the court, denied him discovery, and tainted the trial proceedings. For the reasons that follow, we conclude no relief is due.

We address Appellant's first two sub-issues together. In his first sub-issue, Appellant alleges fraud by the prosecutor, violations of the rules of discovery, and improper suppression of evidence. He initially claims the prosecutor wrongfully denied his request for discovery by deceiving the trial court. He asserts that he met with the prosecutor and a police detective. Appellant's Brief at 44-45. He argues that he was entitled to the prosecutor's notes from that meeting. *Id.* For the first time on appeal, he contends those notes would reflect his statements asserting his innocence and indicating that the complainant Ian Jordan offered him drugs to repay a debt. *Id.* 45.

In his second sub-issue, Appellant refers to the following exchange with Officer Eric Hile during direct examination by the Commonwealth:

Q. How were you alerted to Shane Carey?

A. While we were in the process of investigating, our dispatcher ran a check of our records at our Police Department for known or associated persons listed in our computer system that had been associated with [Appellant]. One of the names that came up was this Shane Carey from a particular incident.

N.T., 3/16/09, at 74.

> Our review is governed by the following principles.
>
>> Rule 573 requires that the Commonwealth "shall disclose to the defendant's attorney all . . . evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth." Similarly, *Brady* provides that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]"

*Commonwealth v. Ferguson*, 866 A.2d 403, 406 (Pa. Super. 2004) (citations omitted). "The purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial. Trial by ambush is contrary to the spirit and letter of those rules and cannot be condoned." *Commonwealth v. Moose*, 602 A.2d 1265, 1274 (Pa. 1992). "[T]here is no *Brady* violation when the defense has equal access to the allegedly withheld evidence." *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (citation omitted). *Brady* does not create a general right to inspect or search all of the Commonwealth's files. *See Commonwealth v. Williams*, 86 A.3d 771, 788 (Pa. 2014).

As to Appellant's contention that he was entitled to the notes from his meeting with the prosecutor, we initially note that Appellant has fashioned a new claim from his original assertion that his prior counsel were ineffective with respect to guilty plea negotiations. Therefore, this issue could be deemed waived. *See* Pa.R.A.P. 302(a); *Fletcher*, 986 A.2d at 794. In any

event, it is apparent that although several meetings with the prosecutor occurred for guilty plea negotiations, Appellant cannot now claim a violation of **Brady** as he had equal access to the information he now seeks, namely, his own exculpatory statements that he made during the negotiations. **See Weiss**, 81 A.3d at 783. As to Appellant's contention that he was entitled to discovery of a police file in which Carey was listed as an associate, Appellant has not shown that the file contained any information material to his guilt or innocence. **See Ferguson**, 866 A.2d at 406. Appellant, in both sub-issues, appears to suggest that he has a general right to search all of the Commonwealth's files. However, our courts have recognized no such right. **Williams**, 86 A.3d at 788. Thus, we discern no arguable merit to Appellant's claims that the Commonwealth intentionally defrauded the court or violated its discovery obligations.

Appellant's third sub-issue concerns the alleged coaching of witnesses. By way of background, during the investigation, Appellant's wife visited the police with her mother for an interview and she initially gave a statement that she and Appellant were asleep until 9:30 a.m. N.T. Trial, 3/17/09, at 168. Appellant's wife eventually gave a second statement, transcribed by her mother. In that statement, Appellant's wife indicated that Carey called Appellant at 7:00 a.m., Appellant left the house shortly thereafter, and returned at 8:45 a.m. After he returned, Appellant told her "Shane's Nike

print is in the side of Ian's head." *Id.* at 169-70.  The Commonwealth called

Appellant's wife at trial.

As evidence of coaching, Appellant refers to a single exchange during

which the Commonwealth questioned Appellant's mother-in-law on direct

examination:

> Q. Outside the statements did [Appellant's wife, the witness's daughter,] sign the notes of Officer Myers as well?
>
> A. I didn't see that.  To be honest with you I did not see her sign them.
>
> Q. Isn't true that [Appellant's wife] went there to give the alibi that they were asleep until about nine-thirty?
>
>> [Trial counsel]: I'm going to object, Your Honor.  It's a leading question.
>>
>> [Commonwealth]: I'm going to ask that she be found adverse, Your Honor.  **She is not answering the questions correctly**.  She is the mother-in-law of the defendant.
>>
>> THE COURT: Overruled.  I do not make that finding, but I am going to allow you to go ahead and cross.

N.T. Trial, 3/19/09 at 9-10 (emphasis added).   The Commonwealth

proceeded to ask leading questions of the witness.  However, the witness's

answers suggested an inability to recall, although she did identify Appellant's

wife's handwriting and signature on a police report indicating that

Appellant's wife initially stated she and Appellant were sleeping until 9:30

a.m.

The prosecutor's request to ask the witness leading questions was, perhaps, poorly phrased. Nevertheless, we discern no basis to conclude Appellant has supported his underlying claim that the Commonwealth coached Appellant's mother-in-law or its other witnesses.

Appellant, in his fourth, fifth, and sixth sub-issues, asserts the prosecutor exceeded the permissible scope of opening and closing statements. He avers that the prosecutor cast him as a "bad person" in its opening statement. He also argues that the prosecutor's closing argument that he was "loan shark" was unsupported by the trial evidence and unfairly prejudiced him. Lastly, he contends the prosecutor's reference to her own medical conditions was an attempt to garner sympathy from the jury.

The Pennsylvania Supreme Court summarized the principles governing Appellant's assertions of prosecutorial misconduct as follows:

> [A] claim of prosecutorial misconduct either sounds in a specific constitutional provision that the prosecutor allegedly violated, or, more commonly, implicates Fourteenth Amendment due process. The touchstone of due process is the fairness of the trial, rather than the culpability of the prosecutor; consequently, it is the trial court's ruling on the defendant's objection to the prosecutor's allegedly improper statement that is reviewable on appeal, and not the prosecutor's underlying misconduct. Nevertheless, the prosecutor's statements must be scrutinized in order to address the propriety of the trial court's ruling. It is well-established that "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." A prosecutor's remarks in opening statements must be fair deductions

from the evidence the Commonwealth intends to offer, which the prosecutor believes, in good faith, will be available and admissible at trial. In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence.

**Commonwealth v. Arrington**, 86 A.3d 831, 853 (Pa. 2014) (citations omitted).

Instantly, Appellant does not identify any particular portion of the opening statement as improper. He instead asserts that the Commonwealth argued he was a bad person. We have reviewed the opening statement by the Commonwealth and find no basis to conclude that it was unduly prejudicial. **See id.**

With respect to the Commonwealth's closing argument, Appellant refers to the following two passages, the first describing Appellant as a "loan shark," the second making reference to the prosecutor's own medical condition:

> [Appellant's wife] was covering for him. He wouldn't have done anything like that. And the only thing that was in question was the money for the tattoo and it wasn't drug related.
>
> But you know what; it doesn't really matter what the money was for here today, whether it was for drugs or a tattoo. Apparently, a lot of people owe him money. He's like a loan shark in this area, I guess. I don't know. Is it just for tattoos. I don't know. We got text messages on [Appellant's wife's] phone that people are owing money and she's picking up money from this Kali person, in the one exhibit, Kali, I guess.
>
> \* \* \*

And as far as injuries and what the victim sustained, I guess when I was thinking about the victim and the injuries sustained and I asked Mr. Carey did you know that he had any issues with his neck or any problems like that, you know, before you beat him? No. You just hit a person and the hell with the result, right? And I think about that and this is the reason why. I don't know if you've ever heard of Lattice degeneration. I guess boxers get it and it's in their eyes. And lattice degeneration is I guess caused by strikes to that area, and what happens is after a while, whatever, the lattice—I don't know what is—degenerates and you have issues then. If you get struck you can lose your vision because something to do with your retina popping out, I don't know, something like that. Your eye detaches or something like that. The reason I'm telling you all this is because I have that. I haven't been a boxer but I've had a couple of kids, and I was very, very seriously sick and at home for months on bed rest and vomiting constantly. I swear to God 80 times a day. So they suspect that somehow while I'm heaving that I'm causing this problem with my eye area, and I have what is called lattice degeneration. At least that is what my eye doctor told me. So if somebody strikes me, just a regular strike, I might lose my vision. A good strike to the head there and the eye area, it's possible that I could lose my vision forever, gone. And so when people are—like Shane Carey and the defendant are striking on this victim, they don't know what condition he's in. They give it no thought, beating in the car, beating in the cornfield, another beating in the cornfield and then they leave, and then they leave him there. So Shane's testimony is that in the car he gets the beating. He's crying and sobbing, wah-wah, you know, don't feel sorry for the victim there. The victim really didn't want to fess up to the crime but I guess he did. There's blood in the car. Shane Carey says there's blood in the car. Yeah, he was bleeding in the car, uh huh, yeah. When they got there he gets out or whatever. I don't know what story is what, either he runs, either they take him. It doesn't matter. He was in their control. He was kept in their control. Since they are not going to get the money, they are going to give him a pounding.

N.T. Trial Excerpts at 96, 100-01.

The prosecutor's remarks about debts owed to Appellant had some support in the testimony at trial. *See* N.T. Trial, 3/17/09, at 182 (indicating that Appellant had at least twenty people who owed him money including Jordan). The prosecutor's rhetorical questions push the boundaries of appropriate argument as they could imply uncharged acts regarding the source of those debts. However, under the circumstances of this case and the appellate arguments raised by Appellant, we discern no basis to conclude that Appellant suffered undue prejudice. Similarly, the prosecutor's comments regarding her own medical condition had a legitimate purpose with respect to the charge of recklessly endangering another person.[22] Her extended references, while certainly departing from the confines of the trial evidence, were not so prejudicial as to curry favor with the jury or inflame the passions of the jury. Accordingly, we conclude Appellant has not demonstrated actual prejudice warranting a new trial. *See Arrington*, 86 A.3d at 853.

In sum, we have reviewed Appellant's third issue raising claims of prosecutorial misconduct and discern no reversible error in the PCRA court's decisions to permit PCRA counsel to withdraw and deny relief. *See Rykard*, 55 A.3d at 1184. Thus, no relief is due based on these claims.

---

[22] Section 2705 of the Crimes Code defines recklessly endangering another person as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

Appellant's fourth issue focuses on the trial court's examination of witnesses and remarks on the evidence during its charge to the jury. He contends that the trial court's conduct evinced bias against him. In support, he notes that the trial court emphasized portions of Carey's videotaped statement to police in the following exchange with Carey:

> [Trial court]. Now the other evidence that I think is significant, you did tell us that—my notes say, you did say before he [Jordan] got out of the car, "You ain't going nowhere unless you go with us."
>
> A. I said something to the effect of that. Yes, sir.
>
> Q. Well, again, I wrote it down. I have a quote beside which I do not do unless I get it exactly the way it was said. Did you not just say on the stand, at some point today, "You ain't going nowhere unless you go with us?"
>
> A. Yes, sir.

N.T. Trial, 3/17/09, at 142-43.

Moreover, Appellant refers to the following remarks in the trial court's charge:

> It is significant at this point that before Mr. Jordan got out of the car that Mr. Carey did say to Jordan, "You ain't going nowhere unless you go with us." Now, that would— and this is the core point, I think for your decision in this case at this point is, was the movement from the car to the other car and then the transport, was it against Jordan's will or was it consensual? Obviously, if you are not convinced beyond a reasonable doubt that it wasn't consensual, then it would be your duty to acquit. If you are convinced beyond a reasonable doubt that Jordan did not consent, then of course that would be the kidnapping charge.

N.T. Trial Excerpts at 123. We are constrained to conclude that no relief is due.

This Court has recognized that "[i]t is always the right and sometimes the duty of the trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted." *Commonwealth v. Ables*, 590 A.2d 334, 341 (Pa. Super. 1991) (citations omitted). "A new trial is required only when the trial court's questioning is prejudicial, that is when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Id.* (citation omitted).

Additionally,

> [t]he trial judge may comment on the evidence as long as the jury is left free to act on its own view of the evidence. It is well settled that the trial court's instructions to the jury must be read as a whole, and that error cannot be predicated on isolated excerpts from the charge.

*Commonwealth v. Bailey*, 469 A.2d 604, 614 (Pa. Super. 1983) (citations omitted).

Instantly, although the trial court emphasized its view of the importance of an isolated portion of Carey's videotaped statement to police, the remarks of the trial court did not misstate the evidence. *See* N.T. Trial, 3/17/09, at 72. Moreover, trial counsel cross-examined Carey in response to the court's questioning to emphasize that Carey made the statement only after Jordan offered to get money for Appellant. *Id.* at 148. The court

ultimately instructed that it was the exclusive function of jury to reconcile the testimony and decide where the truth lies, that its recollection of the testimony—and not the court's—controlled, and that the court's comments on the parties' theories were "gratuitous observations."  N.T. Trial Excerpts at 127, 160.  As we are constrained to presume that juries follow the court's instructions, we conclude that no relief is due.  *See Rykard*, 55 A.3d at 1184; *Ables*, 590 A.2d at 341; *Bailey*, 469 A.2d at 614.

Appellant, in his fifth issue, argues that Juror 8, a newspaper editor and foreperson of the jury, should have been stricken because it was likely that he obtained outside information about the case.  He alleges two newspapers at which Juror 8 worked published stories about the crime. Appellant's Brief at 25.  He notes that although the trial court asked whether Juror 8 could be fair and impartial, no further questions were asked regarding the information he obtained.  *Id.*  Appellant further suggests that the failure to strike Juror 8 constitutes "structural error" due to the juror's alleged bias.  *Id.*  No relief is due.

In *Commonwealth v. Tedford*, 960 A.2d 1 (Pa. 2008), the Pennsylvania Supreme Court considered a claim that trial counsel was ineffective for failing to investigate or establish alleged jury taint based on the possibility that jurors were aware of his prior record.  *Id.* at 17-18.  The petitioner in that case further alleged subsequent appellate counsel was ineffective for diligently investigating his claim of taint.  *Id.* at 18.  The

*Tedford* Court, in relevant part, analyzed Appellant's claim under the *Strickland* standard requiring a demonstration of actual prejudice.

> [The petitioner] has also failed to demonstrate that he suffered prejudice. "The purpose of *voir dire* is to ensure the empanelling of a fair and impartial jury capable of following the instructions of the trial court." Even exposure to outside information does not ineluctably mean that a jury is unfair and partial. . . . [The petitioner] has failed to rebut the evidence that the jury was fair and impartial, and he has failed to demonstrate that he was prejudiced by alleged juror knowledge of his prior criminal record.

*Id.* at 20 (citations omitted).

Instantly, the trial court, when conducting *voir dire*, acknowledged there was "some publicity in the media" about the case and asked the pool of jurors whether (1) they had knowledge of the case and (2) they could "decide the case only on what goes on in the courtroom." N.T. Jury Selection, 3/9/09, at 11-12. Numerous prospective jurors acknowledged they had read about the case in the newspaper. Several other prospective jurors were examined at sidebar about having outside knowledge of the case and stricken for cause. Juror 8,[23] in turn, acknowledged that he had knowledge of the case, and the following exchange occurred:

> THE COURT: Holy cow. We are getting a lot of media today.
>
> JUROR [8]: Yes, (unintelligible).

---

[23] Juror 8 was initially designated as Juror 102 in the pool selection process.

THE COURT: Okay, I hope so. I mean, you are the editor, right?

JUROR [8]: One of them.

THE COURT: Obviously you have read about it in the paper. You don't necessarily believe everything you read in that newspaper, do you?

JUROR [8]: No, I do not.

THE COURT: I couldn't resist that, I'm sorry. In any event, are you prepared to tell us that you can give the defendant a fair trial independent of what you have read in the paper?

JUROR [8]: Yes, Your Honor.

THE COURT: Does counsel want to inquire?

[Trial counsel]: No.

*Id.* at 30. Trial counsel did not object for cause and did not separately exercise a peremptory strike after the pool was narrowed to thirty prospective jurors.

At the PCRA hearing, trial counsel explained that he did not seek to strike Juror 8 based on his belief that it was necessary to avoid conservative jurors and seat jurors who could be receptive to Appellant's alternative lifestyle, including Appellant's ownership of a tattoo parlor. N.T. PCRA Hr'g, 6/4/13, at 53, 56. Counsel also made reference to Appellant's ownership of pit bulls.

Appellant maintains that the seating of Juror 8 constitutes "structural error," which cannot be deemed harmless and which carries a presumption

of prejudice.  ***Cf. Commonwealth v. King***, 57 A.3d 607, 614-15 (Pa. 2012) (discussing claims of structural error and the presumption of prejudice under ***United States v. Cronic***, 466 U.S. 648 (1984)).  ***But see Commonwealth v. Padilla***, 80 A.3d 1238, 1280 (Pa. 2013) (Castille, C.J., concurring) (discussing "proliferation of claims that seek to expand the definitions of structural error, for example, so as to avoid a defense burden to prove ***Strickland*** actual prejudice." (footnote omitted)).   More specifically, Appellant appears to imply that his claim of structural error permits him to avoid establishing either merit or actual prejudice, *i.e.*, that Juror 8 either possessed extraneous information about the case, harbored some bias or prejudice against him, or improperly influenced the jury's deliberations. However, this is not an appropriate analysis.  ***See Tedford***, 960 A.2d at 20. In any event, the PCRA court's finding that trial counsel had a reasonable basis for accepting Juror 8 is supported by the record and the law.  ***See Charleston***, 94 A.3d at 1018-19.  Accordingly, this issue warrants no relief. ***See Rykard***, 55 A.3d at 1184.

Appellant's sixth issue involves a challenge to the warrants issued to search his residence.  On appeal, he contends that the warrant, which was originally issued to search his place of business, was verbally amended in a manner that violated the rules governing the use of "advanced technology." Appellant's Brief at 42.  He specifically asserts that there was no evidence that there was a visual link between the applicant seeking the amendment

and the magisterial district judge permitting the amendment. *Id.* at 40, 42. He faults trial counsel for failing to seek suppression on this basis, asserts trial counsel's explanation that he was focused on the kidnapping and aggravated assault charges was unreasonable, and claims he was prejudiced by the admission of the evidence recovered from his residence. *Id.* at 42-43. He further argues that the PCRA court's conclusion that there was probable cause to search his residence notwithstanding a mistake in the address of the place to be searched "misconstrues" his argument. *Id.* at 42.

Appellant believes the original warrant was issued for his place of business, a search was executed there, and a telephonic amendment was made to search his residence. In support, he relies on the trial testimony of Lieutenant Kevin Lewis that he executed a search warrant for Carey's residence while other officers planned to execute a search warrant for Appellant's place of business. N.T., 3/19/09, at 110-11. However, Detective Mark Baughman testified at trial that he applied for the search warrant for Appellant's residence, mistakenly recited the address for Appellant's place of business, and contacted the magisterial district judge by telephone to amend the address. *Id.* at 136. Detective Baughman testified that he obtained a second warrant to search for drug evidence after seeing paraphernalia and possible narcotics in plain view. There is no indication that Appellant's place of business was searched except for his PCRA hearing testimony.

It is well settled that

the Rules of Criminal Procedure include a requirement of particularity. Rule 206 states: "Each application for a search warrant shall be supported by written affidavit(s) signed and sworn to or affirmed before an issuing authority, which affidavit(s) shall:  . . . (3) [state the] name or describe with particularity the person or place to be searched." Pa.R.Crim.P. 206.  It is notable, however, that the comment to Rule 205, "Contents of Search Warrant", states:

Paragraphs (2) and (3) are intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations.

Pa.R.Crim.P. 205, cmt.

***Commonwealth v. Washington***, 858 A.2d 1255, 1258 (Pa. Super. 2004).

Instantly, Appellant focuses on the manner in which the "amendment" was made, *i.e.*, by telephone and without evidence that the communication was made face-to-face.  However, he fails to address both PCRA counsel's and the PCRA court's conclusions that the affidavit of probable cause in support of the original warrant contained adequate specificity to establish that the search was to be conducted at Appellant's residence.  Moreover, he has failed to include the warrants or the affidavits of probable cause in the record transmitted to this Court.  Therefore, absent any indication that the original warrant was fatally defective by failing to meet the particularity requirements of Pa.R.Crim.P. 206, the alleged defects in the amendment process are irrelevant.  The original warrant could have supported the search

of his residence notwithstanding the technical defect in the address. *See id.* Thus, Appellant has not established arguable merit to his suppression issue or error in the PCRA court's independent review of the issue. *See Rykard*, 55 A.3d at 1184.

Appellant, for his next issue, asserts claims of error in the playing of his videotaped statements to police, which contained a reference to his prior record as well as his invocation of his right to counsel. Appellant consistently maintained he was entitled to a mistrial based on the playing of the tape as a whole and the failure to redact the two portions referring to his prior record and his invocation of the right to counsel. Although we find error in PCRA counsel's and the PCRA court's treatment of this issue, we are constrained to conclude that no relief is due.

Our review reveals the following. At trial, a DVD of Appellant's statement to police was played to the jury. During the playing of the video recording, trial counsel requested a sidebar, at which time he requested a mistrial. N.T. Trial, 3/19/09, at 170. The portion prompting the request was an exchange between Appellant and Lieutenant Richard Goldsmith, when Appellant asked why an officer had his gun drawn when taking him into custody. Lieutenant Goldsmith replied that it was a felony arrest and added "Donny, I know your record." *Id.* 170-71. The court denied the motion for mistrial and trial counsel refused a cautionary instruction because he did not want to highlight the reference. *Id.* at 171-72. Subsequently, at the end of

the video recording, Appellant apparently exercised his right to counsel. Trial counsel asserted he wanted the jury to see his client on the videotape, the tactics of the police, and "how quickly the interview was ended the minute he asked for it." *Id.* at 176-78. The trial court gave a cautionary instruction not to draw an adverse inference from Appellant's invocation of his right to silence.

This Court, in Appellant's direct appeal, addressed a portion of this issue as follows:

> [Appellant] next contends that the trial court erred in failing to grant his Motion for a mistrial, when alleged incriminating statements were admitted at trial, after being ruled inadmissible. Specifically, [Appellant] objects to the playing of a portion of a DVD depicting an interview with [Appellant] during the testimony of Lieutenant Richard Goldsmith. Prior to the playing of the DVD to the jury, the prosecutor indicated to the court that the parties had agreed that Lieutenant Goldsmith would stop the DVD at certain points to ensure that the jury did not hear any testimony about [Appellant's] prior record. N.T., 3/19/09, at 161.
>
> During the playing of the DVD, [trial counsel] requested a sidebar, and then requested a mistrial because the part of the DVD which mentioned that [Appellant] had a prior record was played to the jury. *Id.* at 170. Specifically, counsel for Smith objected on the following basis:
>
>> [Trial counsel]: The interview is why did you pull a gun on me when you came into arrest me. [sic] Donny, you will be arrested for a felony, and then he goes on further to say, plus, Donny, I know your record.
>
> *Id.* at 171. The trial court denied the request for a mistrial on the basis that the term "record" was innocuous. *Id.* at 171-72. The trial court offered to give a cautionary

- 39 -

instruction, but counsel for Smith declined the instruction on the basis that it would bring more attention to the remark. *Id.* at 172.

> A motion for a mistrial is within the discretion of the trial court. [A] mistrial [upon motion by one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.
>
> An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.
>
> . . .
>
> [M]ere passing reference to prior criminal activity is insufficient to establish improper prejudice by itself. The inquiry into whether prejudice has accrued is necessarily a fact specific one. If evidence of prior criminal activity is inadvertently presented to the jury, the trial court may cure the improper prejudice with an appropriate cautionary instruction to the jury. However, the instruction must be clear and specific, and must instruct the jury to disregard the improper evidence.

*Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008).

"Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v. Bongiorno*, 905 A.2d 998, 1000 (Pa. Super. 2006). Our review of the docket entries

> shows that the exhibits admitted at trial, including the DVD at issue here, were not made part of the certified record. **Without the ability to review the DVD, our review of this issue is significantly hampered, as without the DVD, we cannot appropriately consider whether Smith was prejudiced by the playing of the remark or whether, despite the Commonwealth's failure to adhere to the agreement, the remark constituted a mere passing reference. We conclude that Smith has waived this issue for failing to include the DVD in the certified record**. *See id.*

*Commonwealth v. Smith*, 901 WDA 2009, at 7-9 (Pa. Super. Mar. 14, 2011) (unpublished memorandum) (emphasis added).

PCRA counsel, when seeking withdrawal, characterized Appellant's issue as follows:

> This rather convoluted question seeks to relitigate an issue taken before the Superior Court on direct appeal. . . . This matter was taken up on direct appeal and denied. . . . [I]t is undersigned counsel['s] position that this entire issue is waived as being litigated on direct appeal or being so addressed. Petitioner simply tries to recycle the issue and take a second bit by adding his proposed issues of invalid *Miranda* and post arrest silence.

No-Merit Brief, 6/5/14, at 13-14. The PCRA court similarly concluded that the issue was previously litigated asserting this Court "dismissed this claim noting that after we refused [trial counsel's] motion for mistrial, trial counsel refused the offer of a cautionary instruction . . . ." PCRA Ct. Op., 8/22/14, at 21.

- 41 -

Neither PCRA counsel nor the PCRA court correctly identified a basis for finding this issue meritless.[24] However, we are constrained to note that Appellant, in his objection to PCRA counsel's no-merit brief, did not object or raise a separate claim of ineffective assistance of PCRA counsel based on this issue. Moreover, Appellant's Rule 1925(b) statement did not fairly indicate a claim based on this issue. Lastly, in light of our foregoing discussion, we cannot conclude that PCRA counsel's ineffectiveness with respect to this issue was so fundamental as to deprive Appellant of meaningful representation. Accordingly, we conclude that Appellant has failed to preserve and establish error based on this issue. Thus, we decline to disturb the PCRA court's independent review of the merits of Appellant's issues.

Having addressed Appellant initial claims that the PCRA court erred by permitting PCRA counsel to withdraw, we next address Appellant's claims of PCRA counsel's ineffective assistance. We note that Appellant's objection to PCRA counsel's no-merit brief preserved a single claim of layered ineffectiveness as to PCRA counsel's treatment of his issue involving the lack of corrupt source instructions, which he reiterated in this appeal. However, as discussed above, we have concluded that (1) trial counsel stated a

---

[24] The PCRA court, in its Pa.R.A.P. 1925(a) statement, concluded that Appellant's issue was waived for failure to include it in his initial or supplemental PCRA petition. PCRA Ct. Op., 6/3/15, at 20.

reasonable basis for declining the instruction with respect to Carey and (2) Appellant was not entitled to the instruction regarding Jordan. To the extent Appellant preserved a claim of PCRA counsel's ineffectiveness with respect to the Commonwealth's opening and closing statement, we have found that claim to be meritless. Because Appellant cannot prove trial counsel's ineffectiveness with respect to these issues, his layered claim involving PCRA counsel's ineffectiveness also fails. *See Rykard* 55 A.3d at 1190; *see also McGill*, 832 A.2d at 1023. Lastly, Appellant's remaining objections to PCRA counsel's *Turner*/*Finley* letter—trial counsel's stipulations to evidence, a conflict of interest based on trial counsel's election as District Attorney, and the illegal imposition of a mandatory "second strike" minimum sentence— have been abandoned on appeal.[25]

In sum, we conclude that Appellant is not entitled to remand for the appointment of new PCRA counsel or a new trial, and we affirm the order denying his first PCRA petition.

Order affirmed.

---

[25] As to Appellant's challenge to the mandatory minimum sentence in this case, we note that his conviction became final before *Alleyne v. United States*, 133 S. Ct. 2151 (2013), was decided and that it involved facts based on a prior conviction. Accordingly, we decline to raise arguments or decide on this matter *sua sponte*. *But see Commonwealth v. Washington*, 2016 WL 3909088 at *8 (Pa. July 19, 2016) (holding that "*Alleyne* does not apply retroactively to cases pending on collateral review").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2016